STATE v. JOHN SHEETS.

*Trial, preliminary statement to jury—Malicious Mischief—Evidence—Expert Witness—Polling Jury—Verdict—Comments of Counsel—Absence of Defendant during Trial of Misdemeanor.*

1. A preliminary statement of what a party expects to prove may be made to the jury, in both civil and criminal cases. It is a practice which has long prevailed in this state.

2. In malicious mischief, ill-will towards the prosecutor is an essential ingredient of the crime, and as tending to establish the same, it is competent to show that the defendant whipped the prosecutor's child shortly before the offence charged was committed.

3. Where part of a certain conversation is elicited from a witness, the opposite party has the right to put the whole conversation in evidence.

4. A physician who states that he is able to give a professional opinion about a particular case (as, for instance, the effect of poison on brute animals), although he has never treated such a case in his practice, is competent to testify as an expert.

5. The proper time for polling a jury is after their announcement of the verdict.

6. In polling the jury, one of them, upon calling his name, was asked to say whether the defendant was guilty or not guilty, and his reply was, " well, I suppose I must go with the rest "; the court thereupon directed him to respond " guilty or not guilty," and he answered " guilty "; *Held*, proper to receive and record the verdict.

7. Comments of counsel, alleged to be improper, cannot be assigned as ground for a new trial, where it appears that no objection was made at the time, and that the judge, in his charge to the jury, gave them due caution not to be influenced thereby.

8. The absence of defendant from the court-room at the time the court rehearsed a part of the evidence to the jury, on trial of an indictment for a misdemeanor, the defendant being out on bail and his counsel being present and making no objection, does not constitute ground for a new trial, especially where no prejudice resulted to the defendant.

(*State* v. *Robinson*, 3 Dev. & Bat., 130 ; *State* v. *Jackson*, 12 Ired., 329 ; *State* v. *Clark, Ib.*, 151; *Horton* v. *Green*, 64 N. C., 64; *State* v. *John*, 8 Ired., 330; *State* v. *Swink*, 2 Dev. & Bat., 9 ; *Knight* v. *Houghtalling*, 85 N. C., 17 ; *State* v. *Godwin*, 5 Ired., 401, cited and approved).

INDICTMENT for malicious mischief tried at Fall Term, 1883, of RANDOLPH Superior Court, before *MacRae, J.*

The defendant is charged with poisoning a mare colt, the property of one Calvin Hancock.

On the trial, the counsel representing the state made an opening statement to the jury of what the state expected to prove. He said he expected to show that the defendant and Hancock lived near together, and that there was enmity between them ;

that the son of the prosecutor, Hancock, a small boy about eleven years old, about eight days before the alleged offence was committed, went to defendant's spring to get water, when he was assaulted and beaten by the defendant; that defendant was afterwards tried before a justice of the peace and fined ten dollars, on the complaint of the prosecutor; that this would be for the purpose of showing malice, on the part of the defendant, towards the prosecutor.

This statement was objected to by the defendant, but the objection was overruled, and defendant excepted.

Calvin Hancock, a witness for the state, while testifying at length as to the death of his colt, and the circumstances tending to connect the defendant with it, was allowed to testify, after objection by the defendant, that he had a difficulty with defendant, shortly before the death of the colt, about the defendant's whipping the child of witness, and that he had had him before a justice of the peace, by whom he was tried, convicted and fined, and this occurred eight or nine days before the colt died. To the admission of this evidence the defendant excepted.

On cross-examination, the same witness stated that he never tried to hire any one to swear that the defendant proposed to get him to poison witness' stock; that Addison Miller came to witness' house and asked for pennyroyal, and said he came to tell witness something; that witness gave Miller no liquor, nor did he offer to give him the pennyroyal and twenty-five dollars if he would swear that defendant wanted to get him to poison witness' stock.

When the direct examination was resumed, the witness was asked by the state's counsel, "what was the conversation you had with Miller?" This question, and the answer to it, were objected to by the defendant: objection overruled and defendant excepted. Witness proceeded to answer, which was to the effect that the defendant offered to hire him (Miller) to kill the prosecutor's mules.

The same witness also stated on cross-examination that the defendant had moved away from where he was living near him,

and that the move was agreeable to the witness; that witness wanted him to move, but would not have done anything to make him move; and on direct examination resumed, he stated that he would have been willing to pay fifty dollars to get defendant away, so that witness could be at peace. Defendant objected to this statement: objection overruled and defendant excepted.

Dr. Lewis testified that he had been a practicing physician for about seven years; had attended medical lectures at Jefferson College, in Philadelphia, but had never received his diploma; that he was somewhat familiar with the effect of poison on the human and animal stomach, and had experimented some with poison on dogs and other animals; had never been called in to attend a case of poisoning, but thought himself qualified to give an opinion as to the effects of poison. Defendant objected to the examination of the witness as an expert: objection overruled, the witness proceeded to testify, and the defendant excepted.

Dr. Bulla testified that he had been a practicing physician since 1845; had experience as to the effect of poison on the human species, but very little as to its effect on brute animals; thought he was competent, to a certain extent, to give his opinion as an expert in this case, having heard the testimony of the witnesses. The testimony of this witness as an expert was also objected to: objection overruled, and defendant excepted.

In the course of the argument before the jury, the state's counsel used some very vituperative language in reference to the defendant, and the defendant's counsel retaliated by employing similar language in regard to the prosecutor. There was no objection made on either side at the time, and His Honor, in closing his charge to the jury, said: " You must not permit abusive language or epithets to influence your minds on either side. Take the case, as gentlemen entirely above feeling and prejudice; consider it well, and render your verdict upon it."

After the jury had been out some time, they returned to the box and asked that certain parts of the testimony be rehearsed to them by the court. The defendant's counsel were present,

but the defendant was not in court. The fact of his absence was not observed by the judge, and the defendant's counsel made no objection, and the judge recapitulated that part of the evidence desired.

When they came into court to return their verdict, the defendant's counsel demanded that they be polled before the verdict was announced: overruled, and the defendant excepted. The court then said: "Gentlemen of the jury, have you agreed upon your verdict?" and the jury announced a general verdict of guilty. The court then had the jury polled, and each juror was called by name, and responded. When the name of the juror, Milton Hill, was called, he answered, "well, I suppose I must go with the rest," and thereupon the court directed him to respond "guilty" or "not guilty," and he answered "guilty." The defendant excepted because the jury were not polled before the verdict was demanded, and also objected to the entry of the verdict on account of what was said by the juror, Hill.

There was a rule for a new trial for the errors set forth in the exceptions; and further, because the judge did not stop the state's counsel at the time the improper language was used; and because the defendant was not in court when part of the testimony was rehearsed. Rule discharged; judgment; appeal by defendant.

*Attorney-General,* for the State.
*Messrs. J. T. Morehead* and *Scott & Caldwell,* for defendant.

ASHE, J., after stating the facts. The first exception taken by the defendant was that the state's counsel was permitted by the court to make a preliminary statement of what the state expected to prove. So far from the practice being objectionable, we think it is to be commended; for its effect is to direct the attention of the jury to the material points in the evidence. It is a practice which has long prevailed in this state.

The second exception, to the admission of the evidence in regard to the whipping the child of the prosecutor, and the prosecution of the defendant by him for the offence, cannot be sustained. The evidence was clearly admissible. "Malicious mischief consists in the wilful destruction of personal property from actual ill will or resentment towards the owner or possessor." *State* v. *Robinson*, 3 Dev. & Bat., 130 ; *State* v. *Jackson*, 12 Ired., 329. The ill will towards the owner of the property destroyed is an essential ingredient of the crime, and any competent evidence that tends to establish such a state of feeling on the part of the defendant towards the prosecutor, is admissible.

The third exception, that the court allowed the witness, Hancock, to relate the whole of the conversation one Miller had had with him in regard to the poisoning the mules, was properly overruled. For, on the cross-examination of the witness by the defendant's counsel, a part of this conversation had been called out; and it is too well settled as a rule of evidence to admit of a question, where that is done, the opposite party has the right to put the whole conversation in evidence.

The fourth exception, that the court permitted the witness to state "that he would have been willing to pay fifty dollars to get the defendant away, so that the witness could be at peace," is without merit. The statement was made on the re-direct examination, and was on the same line of evidence as that elicited from the witness on his cross-examination by defendant's counsel. On that cross-examination he testified that the defendant had moved away from where he was living near witness; that the move was agreeable to him, and that he wanted him to move, but would not have done anything to make him move. Whatever object the defendant may have had in drawing out from the witness the testimony given on the cross-examination, that given by him on the re-direct examination certainly tended to the same end. We are unable to see the ground of the defendant's objection.

The fifth and sixth exceptions were to the competency of Dr. Lewis and Dr. Bulla as experts.  Dr. Lewis stated that he had attended lectures at a medical college and had practiced his profession for seven years; that, although he had never been called to a case of poisoning, he had experimented some with poison on dogs and other animals, and he thought he was qualified to give an opinion as to the effects of poison.  Dr. Bulla testified that he had been a practicing physician since 1845, and he had had some experience of the effect of poison on the human species, but very little in regard to brute animals, and he thought he was competent, to a certain extent, to give an opinion.

There was no error in the ruling of His Honor that both of these physicians were competent to testify as experts.  When the professors of science, as physicians, for instance, swear that they are able to pronounce an opinion in any particular case, although they say at the same time that precisely such a case had not before fallen under their observation or under their notice in the course of their reading, it is competent to give in evidence their opinion.  *State* v. *Clark,* 12 Ired., 151.  To the same effect is *Horton* v. *Green,* 64 N. C., 64, which was an action to recover damages for deceit in the sale of a mule alleged to have glanders.  One Dr. Rivers was examined, who had been practicing his profession for eleven years.  When asked whether, from his general knowledge of diseases, he could tell whether the symptoms in that case indicated that the disease was of long standing or not, he answered that he had no particular acquaintance with diseases of stock, but from his books, observation and general knowledge of diseases of the human family, he could tell whether certain symptoms indicated that a disease is of recent or long standing, though he had never seen a case of glanders unless that was one.  It was objected that the witness had not qualified himself to answer as an expert, but this court held that he was competent.

The seventh exception was to the refusal of His Honor to have the jury polled before their verdict was announced.  There

was no error in this.   It is certainly not error to poll them after
the announcement that they have agreed in their verdict, and
that is the approved and usual practice.   In *Watts* v. *Brains,* 1
Cro. Eliz., 778, where, upon the agreement of the jury, they
came to the bar and the foreman pronounced their verdict that
the defendant was not guilty; "the court misliking thereof,
being contrary to their direction, examined every one of them
by the poll whether that was his verdict."   This decision is
cited by this court with approval in *State* v. *John,* 8 Ired., 330;
and Mr. BISHOP says "the object of polling is merely to ascer-
tain whether the verdict rendered by the foreman in behalf of
himself and the rest is really concurred in by the others; there-
fore the inquiry is restricted to the question, 'is this your ver-
dict?'"   1 Bish. Cr. Pro., §830.

The eighth exception was to the recording the verdict on
account of what the juror, Hill, said when the jury were being
polled.   When his name was called and he was asked to say
whether the defendant was guilty or not guilty, he answered,
"Well, I suppose I must go with the rest."   The court directed
him to respond "guilty" or "not guilty," and thereupon he
answered "guilty."   There was no ground for refusing to
receive the verdict.   The last answer of the juror was an assent
to the verdict of guilty.   The case of *State* v. *Godwin,* 5 Ired.,
401, is very like this.   There, the prisoner was tried for murder,
and upon the return of the jury into court, they were polled at
the prisoner's request.   Eleven of the jurors each answered that
he found the prisoner guilty.   The remaining juror answered,
that when the jury first went out, he was not for finding the
prisoner guilty, but that a majority of the jury were against
him, and that he then agreed to the verdict, as delivered by the
foreman.   He was then asked, "What is your verdict now?" and
he replied, "I find the prisoner guilty."   And it was held that
there was no objection in law to the verdict.   To like effect is
the case of *State* v. *Swink,* 2 Dev. & Bat., 9.

The other exceptions taken by the defendant were taken after
verdict, upon a motion for a new trial.   They were:

First, that the judge failed to stop the state's counsel in his abuse of the defendant. This objection came too late after verdict. *Knight* v. *Houghtalling*, 85 N. C., 17. But if it had been taken in time, the error was corrected by the court in its charge to the jury.

Secondly, to the rehearsal by the court of a part of the evidence to the jury, in the absence of the defendant. It was no ground for a new trial. The indictment is only for a misdemeanor, and the defendant, we presume, was out on bail, as the record does not show that he was in custody. If he saw proper to absent himself during the progress of the trial, it was his own fault. His counsel were present when the evidence was rehearsed, and there was no objection on their part, nor complaint made by them. and it was not pretended, when the motion for a new trial was made, that any prejudice had resulted to the defendant by the rehearsal. See *State* v. *Paylor*, *ante* 539, decided at this term.

Our conclusion is, that there is no error. Let this be certified to the superior court of Randolph county, that the case may be proceeded with according to this opinion and the law.

No error. Affirmed.