STATE v. WINDLEY.

---

### STATE v. W. B. WINDLEY.

(Filed 10 September, 1919.)

1. **Sheriffs—Indictment—Statutes—Taxes—Instructions—Appeal and Error.**

    Where the defendant, a sheriff, is convicted under an indictment under Rev., 3408, for unlawfully, "willfully, and feloniously" failing to pay over moneys collected by him by virtue of his office, and by a second count. that he, in like manner, willfully and feloniously failed to pay them to the county treasurer and other parties lawfully entitled thereto, a verdict of the jury of guilty is construed as being guilty of the offense charged in the indictment, and the words "willfully and feloniously" may not be regarded as mere surplusage because of a charge by the court, in effect, that he would be guilty under the first count, under Rev., 3576, upon his own evidence, if believed, to the effect that he had failed to pay over to the proper persons all money he had received for them by virtue or color of his office, the offense under the former section being a felony, and under the latter a misdemeanor, and the instruction is held as reversible error.

2. **Indictment— Verdict— Instructions— Statutes— Juries— Poll— Questions for Jury—Trials.**

    Where a sheriff is tried under an indictment under Rev., 3408, for unlawfully, willfully, and feloniously failing to pay moneys which he has collected by virtue of his office to the proper parties entitled, it is reversible error for the trial judge to poll the jury before verdict as to whether

they believed the testimony of the defendant himself, stating he had proved himself a man of good character, and instructing them to find him guilty of the offense charged upon his own testimony, if believed, the presumption being that he was innocent of the offense, with the burden of proof upon the State to show guilt beyond a reasonable doubt, and the fact of his guilt being a question solely for the jury to determine.

INDICTMENT, tried at November Term, 1918, of BEAUFORT, when the defendant was convicted and appealed.

The charge in the indictment is that the defendant had unlawfully, willfully, and feloniously, as sheriff of Beaufort County, failed to pay over and deliver to the proper persons entitled to receive the same, when lawfully required to do so, certain money and funds which he had received by virtue or color of his office in trust, contrary to the provisions of the statute. The indictment was drawn under Rev., 3408, and this is stated in the brief of the State, which refers to the original statute, Code of 1883, sec. 1016, as having been amended, in consequence of the decision in *S. v. Connelly,* 104 N. C., 794, by Public Laws of 1891, ch. 241, and brought forward in the Revisal as sec. 3408.

There was evidence tending to show that the defendant had collected certain taxes, especially unlisted taxes, such as licenses and privilege taxes, and had failed to pay over the same to the officer designated by the law to receive them. The court instructed the jury that if they believed the defendant's testimony, which he gave in his own behalf, and found the facts to be as it tends to show them to be, it would be their duty to return a verdict of guilty on the first count, ignoring the count for embezzlement.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*

*E. A. Daniel, Jr., and Small, MacLean, Bragaw & Rodman for defendant.*

WALKER, J., after stating the case: If we assume that the testimony of the defendant was of such a nature as to warrant the instruction to the jury, we are of the opinion that the court erred in further telling them, in answer to the question of one of the jurors, that they should convict the defendant if he simply received certain money and failed to pay it to the proper party, though he may have paid it to the county treasurer. The first part of section 3408 of the Revisal of 1905 relates to the embezzlement or willful and corrupt use or misapplication of funds held by any officer, agent, or employee of any city, county or incorporated town, or of any penal, charitable, religious, or educational institution, and denounces it as a felony, and that any such person convicted of the same shall be fined and imprisoned in the penitentiary for a time to be fixed by the court in the exercise of its discretion. The

next provision of the section applies to the embezzlement, wrongful con--
version, or corrupt use or misapplication to any purpose, other than that
for which it is held, of any money, funds, securities, or other property,
which such officer shall have received, by virtue, or color of his office, in
trust for any person or corporation, and such act is declared to be a
felony.   The statute, as amended in the year 1891, is composed of this-
provision, and the last one in the section (amendment of 1891), which
is as follows :   "The provisions of this section shall apply to all persons-
who shall go out of office and fail or neglect to account to or deliver over
to their successor in office or other persons lawfully entitled to receive-
the same all such moneys, funds, and securities or property aforesaid.
The punishment shall be imprisonment in the State's Prison or county
jail, or fine, in the discretion of the court."   The first part of the amend-
ment refers to the embezzlement, conversion, etc., of money, funds, and
other things held in trust for any person or corporation, and the second
part to the failure or neglect of the officer to account for and deliver
over to their successors in office, or to other persons who are lawfully
entitled to receive the same, all *such* moneys, funds, etc., which means,
by the use of the word "such," all the money or funds, etc., held in trust
by such officers for any person or corporation.   The Court held, in
*S. v. Connelly,* 104 N. C., 794, that the statute, as then worded, applied
only to the public officers, who are designated in the same, and to private-
persons who held money or property in trust for the public corporations-
named therein, and, therefore, that Connelly, as clerk of the Superior
Court, who held funds belonging to a distributee, private person or cor-
poration, was not indictable for failing to pay or deliver it to the person
entitled thereto.   At the next session of the Legislature after that case-
was decided, the statute was amended, as indicated above, so as to cover
such a case.   But the Legislature has not failed to provide very fully
for the case presented in this record.   Rev., 3576, is as follows :   "If any
State or county officer shall fail, neglect, or refuse to make, file, or pub-
lish any report, statement, or other paper, or to deliver to his successor
all books and other property belonging to his office, or to pay over or de-
liver to the proper person all moneys which come into his hands by virtue-
or color of his office, or to discharge any duty devolving upon him by vir-
tue of his office as he is by law required to do, he shall be guilty of a mis-
demeanor."   The language of this section is very broad, and seems to in-
clude every case, where any officer named therein has failed to pay to
the proper person, whoever he may be, all moneys received by virtue-
or color of his office.   The offense is made a misdemeanor and punish-
able as such under the law.   But it is suggested that the jury are pre-
sumed to have followed the judge's instruction that a verdict of guilty-
should be rendered by them, if they found only that defendant had re-

ceived certain money, as taxes, and failed to pay it over to the proper party, and that such a verdict upon the only count in the indictment they were directed to consider, would mean no more, and would not be one for embezzlement, and that as the jury convicted under this instruction, the verdict should be taken·as convicting only for the offense described in the charge; that this offense, though not a felony, but simply a misdemeanor, under Rev., 3576, is included in the general allegations of the count, and therefore the verdict should stand as one convicting defendant of the misdemeanor, and the punishment imposed accordingly, the words "willfully and feloniously" being regarded as mere surplusage. This would be dangerous practice, even if we admit the premises and the conclusion drawn from them. The defendant was convicted of the felony, and the jury so declared when they rendered the verdict, which means, when properly construed, guilty of the offense charged in the bill of indictment, which is a felony, because it is made so by the statute. The jury did not return as their verdict that he was guilty of the misdemeanor charged in the bill, even if such a verdict would be a legal and valid one, as to which we do not decide, it not being necessary that we should do so.

There is another consideration. As this verdict stands now, the defendant has been convicted of a felony, and if the verdict is permitted to stand, he will be deprived of his right to vote and to hold office, under Art. VI, secs. 2 and 8 of the Constitution, and the punishment may extend to confinement in the State Prison at hard labor. This but shows the great importance of a close scrutiny of the record to see if the defendant has been properly convicted of the felony charged in the bill, or whether, if guilty at all, his offense is only a misdemeanor. It is all too serious a charge for the record to be left in any state of uncertainty. The court thought that the defendant had been convicted of a felony, as it sentenced him to be imprisoned three years in the penitentiary.

But, leaving this matter here, we are of the opinion that, in any view, whether it be a felony or a misdemeanor, the learned judge went too far in his charge to the jury. We are fully aware that he did not. intend to do so, but intended to confine his instructions to the jury within the proper limits. The language of the court addressed to the jury was,. in our opinion, subversive of that freedom of thought and of action so very essential to a calm, fair, and impartial consideration of the case. The desire to see the law vindicated, and any violation of it receive the proper punishment, is a most commendable one, but we should not indulge it at the risk of taking from the defendant any of the constitutional or statutory safeguards. The slightest intimation of the court, by word or deed, as to what the verdict should be, may be fatal to any defendant, though he may be ever so innocent, and our statute provides.

43—178

against it.  The jury should, at all times, be left free and untrammeled to find the facts.  The judge declares the law arising upon the evidence, and the jury should be governed by his instructions, but they are the sole triers of the facts, subject to the right of the jury to say what evidence is competent and relevant, and what it tends to prove.  What it does prove is the peculiar question for the jury to decide.

The present *Chief Justice* clearly stated the rule in *S. v. Riley,* 113 N. C., 648, when he said: "The plea of not guilty disputes the credibility of the evidence, even when uncontradicted, since there is the presumption of innocence, which can only be overcome by the verdict of the jury."  As said by *Judge Henderson* and *Judge Hall,* in *Bank v. Pugh,* 8 N. C., at p. 206: "The manner in which the judge instructed the jury is, to me, also sufficient to warrant a new trial.  He charged the jury that if they believed the testimony of Stephens, they should find the paper-writing not to be the deed of the defendant.  Now what Mr. Stephens' testimony proved was a thing on which he could not decide; that belonged to the jury, who are the constitutional judges, not only of the truth of testimony, but of the conclusions of *fact* resulting therefrom."  And by *Pearson, J.,* in *S. v. Shule,* 32 N. C., 154: "We think there was error in the mode of conducting the trial.  There must be a *venire de novo.*  There was a departure from the established mode of proceeding, and the wisest policy is to check innovation at once, particularly as in this case it concerns the trial by jury, which the bill of rights declares 'ought to remain sacred and inviolable.'  .  .  .  The innovation is that instead of permitting the jury to give their verdict, the court allows a verdict to be entered for them, such as it is to be presumed the court thinks they ought to render—and then they are asked if any of them disagree to it, thus making a verdict for them unless they are bold enough to stand out against a plain intimation of the opinion of the court."  The same view of what is the proper mode of trial is thus stated by *Justice Connor,* in *S. v. Adams,* 133 N. C., 667: "It may well admit of question whether it be not more consonant with the genius of our law to permit the juries, under proper instruction of the court, to find the truth as they believe it to be, certainly in criminal cases, drawing such inferences and conclusions from admissions and facts proved to their satisfaction as experience, observation, and reason suggest."

The judge, in this case, did not enter the verdict and ask if any of the jurors disagreed to it, as was done in *S. v. Shule, supra,* but the jurors were, in effect, polled and asked if each of them believed the testimony of the defendant, and if so, to hold up his right hand.  This was done after a statement by the court of what the defendant, as a witness in his own behalf, has said, and the further remark that he had proved himself to be a man of good character.  The court then instructed the jury, that

having all of them said that they believed the statement of defendant, he had told them before, and would tell them now, that it is their duty, as jurors, to take the law from the court, and if they believe defendant's testimony, and found the facts which it tends to show, to convict him. There are other expressions of like kind, though somewhat more intensive in form and emphasis. It may be that this defendant is guilty under the facts of violating the law as defined in the statute, but if so, the jury must be permitted to find the facts from the evidence freely and voluntarily, and this is true, no matter how plain a case against the defendant it may appear to be, as the plea of not guilty challenges the truth of the testimony, and "denies the credibility of the witnesses." The defendant was not given any benefit of the presumption of innocence, and no reference was made to it or to the doctrine of reasonable doubt. The burden of showing guilt is upon the State, as the contrary is presumed, and this requires that it should prove its case to the full satisfaction of the jury. It was said in *S. v. Simmons,* 143 N. C., 613, and approved in *S. v. Godwin,* 145 N. C., 461: "When the jury returned to the court, after having been out for a few minutes, the judge inquired of them as to their trouble in reaching a verdict, and they replied that some of them thought the defendant guilty and others thought he was not guilty; whereupon the judge polled the jury, asking each juror if he believed the evidence, when each replied that he did believe the evidence as given on the stand. This was not according to regular procedure or the approved precedents in such cases, if it was not a direct violation of the Act of 1796. . . . Besides, being in effect an intimation of opinion as to what the verdict should be, the inquiry of the judge and the manner of making it were calculated to deprive the jury of the freedom of thought and action which is so essential to an impartial consideration of the case and a proper discharge of their duty." See, also, *S. v. Green,* 134 N. C., 658; *Benton v. Toler,* 109 N. C., 238, and *McCanless v. Flinchum,* 98 N. C., 358, where the Court said: "Proof is the result or conclusion usually reached by evidence. If there was evidence upon the issues, the jury alone could determine and weigh its effect, and find the fact to be deduced from it." *S. v. Davis,* 15 N. C., 612 (op. of *Gaston J.*).

We do not think that the evidence was such as to admit of the instructions given by the court. The manner of instructing the jury violated the spirit, if not the letter, of our statute, Rev., 535 (Act of 1796, ch. 452). *Withers v. Lane,* 144 N. C., 184. It is not permissible to poll the jury before the verdict is announced, and it is done then to make sure of the verdict being that of the entire jury—the conclusion of all the jurors, *S. v. Sheets,* 89 N. C., 543, at 549, 550; Bish. Cr. Pro., sec. 830; *S. v. Young,* 77 N. C., 498; and that is the approved and usual practice.

*S. v. Sheets, supra.* We do not regard it as according to the established rule to poll the jurors, as to a special finding, and especially as to their belief regarding one particular fact, or the impression made upon their minds. It is better to follow the beaten way in such vital matters. There are other considerations not now necessary to be mentioned.

A learned presiding judge, in the course of a trial, may, and sometimes does, unwittingly, or inadvertently, so express himself as to influence the minds of the jurors, and this, of course, is done unconsciously and without due regard, at the time, to such injurious effect. We do not doubt that such was the case in this instance. The error, though, must be corrected, however unconsciously committed, for the harm is just the same, in kind and degree. The accused may be guilty of the crime alleged against him, but, in passing upon exceptions like those now taken, we must not forget, and should assume, that he may be innocent. We must conclude that the charge, especially when construed as a whole, was erroneous in the respect above indicated.

For the reasons stated, the defendant is entitled to a new trial. The solicitor will consider, in view of what we have said, whether it is prudent to make the indictment more conformable to the proof by adding another count, or by a fresh bill, but this is left entirely to his judgment.

We do not say that the defendant may not be convicted under the bill now before us, as it is not necessary to do so by anticipating further developments in the progress of the case. Our decision is strictly confined to what is presently before us, and does not go beyond it.

New trial.