## STATE v. RUFUS LEONARD.

(Filed 22 August, 1952.)

**1. Criminal Law § 21—**

The crimes of malicious injury to personal property, G.S. 14-160, and perjury, G.S. 14-209, are not the same either in fact or in law, and therefore upon a plea of former jeopardy in a prosecution for perjury, based upon testimony of defendant in a former prosecution under G.S. 14-160, the court properly determines the plea as a matter of law, there being no necessity to submit an issue to the jury.

**2. Same—**

In a prosecution for malicious injury to personal property defendant testified that he was not at the place in question at the time. Defendant was acquitted on this charge. This prosecution for perjury was based upon this sworn statement of defendant in the former prosecution. *Held:* The former acquittal will not support a plea of former jeopardy in the prosecution for perjury, since the charge of perjury is not based on the assumption that defendant was guilty of the charge of malicious injury to personal property, and his acquittal upon that charge does not necessarily establish the fact that all material evidence given by him in that case was true.

APPEAL by defendant from *Rousseau, J.,* and a jury, September 1951 Term, DURHAM. No error.

The offense is alleged to have been committed on 20 June, 1951, when defendant was on trial upon a warrant alleging that he "did wilfully, maliciously and unlawfully damage the property of John L. Doles by overturning his automobile, a 1938 Chevrolet coach, in the extent of approximately $100.00."

The evidence of the State in that trial tended to prove that defendant was at Gate No. 1 of the Erwin Mill Plant in Durham, North Carolina, on 20 April, 1951, between 3:00 and 3:30 p.m., and that he at that time, in conjunction with others, turned over and damaged the automobile of John Doles.

Defendant, as a witness in his own defense, testified under oath that he was not at said Gate No. 1 on 20 April, 1951, between 3:00 and 3:30 p.m., and that he had no part in the damaging of said automobile. He relied upon an alibi and his testimony was corroborated by several witnesses.

The jury returned a verdict of not guilty of the charge of malicious injury to personal property.

Thereafter, defendant was arraigned and tried upon an indictment charging that on 20 June, 1951, he "did feloniously, wilfully, and unlawfully commit perjury upon the trial of an action in Superior Court in Durham County, wherein the State of North Carolina was plaintiff and Rufus Leonard was defendant, by falsely asserting on oath or solemn affirmation that on the 20th day of April 1951, between 3 and 3:30 P.M., he, Rufus Leonard, was not around Gate No. 1 of the Erwin Mill Plant in Durham, North Carolina, where an automobile belonging to Jno. Doles was turned over and that he, Rufus Leonard, had not been around the gate that day and that he had not had anything to do with turning the car over."

Upon the perjury charge, the State offered evidence that the defendant was properly sworn according to law in the previous trial, and that his testimony included an assertion that he was not at Gate No. 1 of the Erwin Mill Plant in Durham, North Carolina, at the time alleged, but was at some other place, and, therefore, had no part in the overturning and damaging of the car of John Doles. The State's evidence as it related to defendant's presence at said gate and his participation in the damage to the automobile was substantially the same at the perjury trial as at the trial for malicious injury to personal property, except that corroborative and cumulative evidence was added at the perjury trial.

Defendant's evidence was substantially the same at both trials.

There was a verdict of guilty on the perjury charge. From the judgment imposing a sentence in the State's prison, defendant appealed, assigning errors.

*Attorney-General McMullan, Assistant Attorney-General Moody, and Charles G. Powell, Jr., and Robert B. Broughton, Members of Staff, for the State.*

*Carl E. Gaddy, Jr., and Robert S. Cahoon for defendant, appellant.*

Valentine, J.  The following question is determinative of this appeal: Is the defendant, who has been acquitted by a jury of the charge of malicious injury to personal property, entitled to plead former jeopardy or *res judicata* as a defense to a charge of perjury alleged to have been committed by him at the former trial?

By an examination of the record, the court below as a matter of law could determine that the charge of perjury and the charge of malicious injury to personal property were not the same, both in fact and in law. Therefore, it was unnecessary to submit to the jury an issue presenting this phase of the case. *S. v. Dills,* 210 N.C. 178, 185 S.E. 677; *S. v.*

*Midgett,* 214 N.C. 107, 198 S.E. 613; *S. v. Davis,* 223 N.C. 54, 25 S.E. 2d 164; *S. v. Williams,* 229 N.C. 415, 50 S.E. 2d 4. In order for an acquittal to constitute a bar to a subsequent prosecution, the two crimes charged must be substantially identical. It is not sufficient that the two prosecutions should grow out of the same transaction, but they must be for the same offense. *S. v. Nash,* 86 N.C. 650; *S. v. Taylor,* 133 N.C. 755, 46 S.E. 5; *S. v. Hankins,* 136 N.C. 621, 48 S.E. 593; *S. v. Davis, supra; S. v. Lippard,* 223 N.C. 167, 25 S.E. 2d 594; *S. v. Williams, supra; S. v. Hicks,* 233 N.C. 511, 64 S.E. 2d 871. The crimes of malicious injury to personal property and perjury as defined in *S. v. Smith,* 230 N.C. 198, 52 S.E. 2d 348, are two distinct offenses condemned by separate statutes, G.S. 14-160, and G.S. 14-209.

It appears that the evidence offered at the perjury trial was abundantly sufficient to convict the defendant of the charge of malicious injury to personal property, but the bill of indictment also charged that the defendant's false testimony included a statement that he was not at Gate No. 1 between 3:00 and 3:30 p.m. on the day in question. This allegation was supported by proof adequate to sustain a conviction upon the charge of perjury.

While in some jurisdictions it is held differently, the modern trend and better view appear to be that an acquittal of one charged with a crime does not preclude the State from prosecuting a charge of perjury based upon testimony given by him at the trial, although a conviction of perjury would necessarily import a contradiction of the verdict in the former case. *Slayton v. Commonwealth,* 185 Va. 371; 41 A.J., Perjury, sec. 53; 48 C.J., Perjury, sec. 98; *McDaniel v. State,* 13 Ala. App. 318, 69 So. 351; *Jay v. State,* 15 Ala. App. 255, 73 So. 137; *Teague v. Commonwealth,* 172 Ky. 665, 189 S.W. 908; *S. v. Cary,* 159 Ind. 504, 65 N.E. 527; *Allen v. U. S.,* 194 Fed. 664; *S. v. Vandemark,* 77 Conn. 201, 58 Atl. 715.

The charge of perjury upon which defendant was convicted is not necessarily based upon the assumption that he was guilty of the charge of malicious injury to personal property. His acquittal upon that charge does not necessarily establish the fact that all material evidence given by him in that case was true. 147 A.L.R. 1000, 1001, and cases there cited. A verdict of acquittal is not a finding by the jury that the defendant's evidence was true. It is merely a declaration that the jury upon all the evidence is not satisfied beyond a reasonable doubt of defendant's guilt. Therefore, we cannot hold that a verdict of acquittal is equivalent to an affirmative finding that all of defendant's testimony at the former trial was true. Surely, the law should not permit a defendant by his own perjured testimony to secure a verdict in his favor, with immunity from a charge of perjury, while other witnesses testifying in his defense would

be subject to conviction and punishment for false swearing. Such a doctrine would place a premium upon perjury and a penalty upon probity.

Public policy recognizes the principle of *res judicata* in criminal cases, but at the same time it requires that perjurers be brought to trial and punished. To hold that a person could go into a court of justice and by perjured testimony secure an acquittal and by that acquittal be shielded from a charge of perjury would be a dangerous doctrine. *Slayton v. Commonwealth, supra; Jay v. State, supra; Yarbrough v. State,* 79 Fla. 256, 83 So. 873.

In Brill's Cyclopedia Criminal Law, Vol. 2, Chap. 25, para. 859, it is said: "If a defendant in a criminal prosecution testifies falsely in his own behalf he may be convicted of perjury though he was acquitted of the offense there charged, at least when the testimony as to which perjury is charged is as to a collateral or subordinate matter, not to a mere denial of guilt, so that the conviction of perjury does not in effect amount to a direct contradiction of the judgment of acquittal in the former prosecution." This same principle is laid down in the following and many other cases: *Youngblood v. U. S.,* 266 Fed. 795; *Allen v. U. S., supra; S. v. Smith,* 119 Minn. 107, 137 N.W. 295; *People v. Niles,* 300 Ill. 458, 133 N.E. 252.

In the instant case, the defendant could have been convicted under the perjury indictment by a showing that he was in fact at Gate No. 1 of the Erwin Mill Plant between 3:00 and 3:30 p.m. on 20 April, 1951, and that this fact was in contradiction of his sworn testimony at the former trial. This proof alone would not have been sufficient to have convicted him on the charge of malicious injury to personal property.

The law and good conscience encourage witnesses and litigants to give true and accurate testimony and demand that they always tell "the truth, the whole truth, and nothing but the truth." It is also a policy of the law that swift and certain punishment be visited upon those who stoop to false swearing. Jury verdicts and judgments of the court should be fair and free from fraud. This can only be accomplished by strict enforcement of the laws condemning perjury. Niceties and refinements cannot be allowed to shield one who bears false witness, either for himself or against his neighbor. If a defendant can procure an acquittal and enjoy immunity from prosecution for false swearing as to testimony upon which a verdict of not guilty is based, the plan and purpose of the law would be defeated.

Both the brief of the State and that of the defendant are well prepared and show a great amount of research, but it appears that the cases throughout the country preponderate in favor of the conclusion we have here reached.

We have carefully examined all exceptions in the record and find no error which justifies the awarding of a new trial.

No error.