STATE v. GARY DAVID OVERMAN, HARVEY CLAYTON OVERMAN, JOHN MARVIN OVERMAN.

(Filed 1 March, 1967.)

**1. Criminal Law § 160—**

The presumption is in favor of the regularity of the proceedings in the lower court, and when the record fails to show the proceedings culminating in the denial of defendant's plea in abatement on the ground of improper venue, defendant has failed to show error in the denial of the plea.

**2. Criminal Law § 15—**

In this prosecution of defendants for raping, successively, prosecutrix, the State's evidence, without contradiction, showed that prosecutrix was forced from the car of her companion into a car in possession of defendants and that the first act of rape began immediately thereafter in the county in which the indictment was laid. *Held:* It was not error for the court to deny plea in abatement by one defendant for improper venue in the absence of evidence by such defendant that the offense with which he was charged occurred in another county. G.S. 15-134.

**3. Criminal Law § 26—**

A defendant may not be put in jeopardy for any offense of which he could lawfully have been convicted upon the trial under a former indictment, but where a defendant could not be lawfully convicted under the former indictment of the offense of which he is charged in the second indictment, plea of former jeopardy will not lie, even though the separate offenses were committed in the course of the same series of acts pursuant to the same plan of action.

**4. Constitutional Law § 28—**

A defendant may not be lawfully convicted of an offense which is not included within the offense charged in the bill of indictment, regardless of the evidence introduced against him.

**5. Criminal Law § 26—**

The offenses of kidnapping and rape each have essential elements which are not component parts of the other, and therefore a prosecution under an indictment for kidnapping will not support a plea of former jeopardy in a subsequent prosecution for rape, even though rape may have been the motive for the kidnapping and even though defendants in the prior prosecution for kidnapping were convicted, respectively, of assault on a female and simple assault, the record in the kidnapping prosecution disclosing that the court instructed the jury that occurrences subsequent to the kidnapping were not germane to that charge and might be considered only as bearing upon the questions of force and felonious intent.

**6. Same—**

Where the offenses with which defendants were successively prosecuted are separate and distinct so that as a matter of law defendants could not have been lawfully convicted under the first prosecution of the offense charged in the second prosecution, the plea of former jeopardy in the second prosecution is correctly overruled as a matter of law, and there is no necessity to submit the issue of former jeopardy to the jury.

**7. Criminal Law § 87—**

Indictments charging defendants with rape based upon their successive attacks upon the prosecutrix, each in the company of the others, as a part of one entire plan of action, *held* properly consolidated for trial.

**8. Criminal Law § 33—**

Where evidence of the acts of some of the defendants prior to the time they were joined by another of the defendants is excluded by the court as to such other defendant, but later evidence discloses that such other defendant was acting in concert and joined his co-defendants in the commission of the offense charged, the court correctly instructs the jury that the evidence theretofore excluded as to such defendant might be considered against him upon the question of his guilty knowledge and intent.

**9. Criminal Law § 50;    Rape § 4—**

It is competent for prosecutrix to testify that she did not voluntarily engage in sexual relations with any of defendants at any time during the night in question, the testimony being of a fact within the knowledge of the prosecutrix and not an expression of opinion invading the province of the jury, it being for the jury to determine whether her testimony as to consent was true or false.

**10. Indictment and Warrant § 1—**

The absence of a preliminary hearing is not ground for the quashal of an indictment, since a preliminary hearing is not a prerequisite to the finding of an indictment.

**11. Constitutional Law § 31—**

The denial of a defendant's motion that he be furnished, at public expense, with a transcript of a former prosecution of such defendant for

the ·purpose of preparing for trial on a third indictment not involved in the present prosecution, is not error.

## 12. Indictment and Warrant § 13—

Motion for a bill of particulars is addressed to the sound discretion of the trial court, and when the record discloses that defendants were apprised of the nature of the State's case and that the evidence would be the same as in a former prosecution of defendants, no abuse of discretion is shown in the denial of the motion, there being no substantial difference in the testimony at the two trials.

## 13. Jury § 6—

The fact that the jury, pursuant to direction of the court, was empaneled by the solicitor rather than the clerk is not ground for objection.

## 14. Criminal Law § 99—

On motion to nonsuit, the evidence of the State is to be considered in the light most favorable to it, and any contradictions in the testimony of the State's witnesses are to be disregarded.

## 15. Rape § 5—

Evidence tending to show that the four defendants had the 16 year old prosecutrix alone at night in an automobile driven by them successively and that each in turn had sexual intercourse with her by force and against her will, threatened to cut her throat with a knife and forced her to silence when they stopped for gasoline by holding a knife at her throat, with testimony of prosecutrix that she begged for her release and that each act of intercourse was against her will, etc., *held* sufficient to be submitted to the jury on the question of each defendant's guilt of rape.

## 16. Rape §§ 4, 5—

The fact that a girl, in company with other girls, went to a dance hall with no male escort, even though the place be one at which men of low morals might be reasonably expected to congregate, does not establish her consent to sexual intercourse with such men, although it is competent evidence to be considered by the jury on the question of consent.

## 17. Criminal Law § 97—

Where some of defendants jointly tried introduce evidence, the court correctly denies a defendant not introducing evidence the right to the closing argument to the jury.

## 18. Constitutional Law § 33—

In a prosecution for rape, it is not error for the solicitor to comment upon the relative size of one of defendants as compared with that of the girl, even though such defendant does not testify as a witness, he being present in the courtroom throughout the trial.

## 19. Criminal Law § 116—

The fact that the court requires the jury to continue their deliberations successively on two occasions after they had announced a "deadlock" is not ground for objection when the record discloses that the trial lasted some ten days and that the entire deliberations of the jury consumed slightly more than five hours, and further that the trial judge gave no intimation as to what the verdict should be but specifically instructed the

jury that none should compromise his convictions or do violence to his conscience in order to reach a verdict.

**20. Criminal Law § 103—**

Announcement of the solicitor amounting to a bill of particulars and including a statement that he would not rely on defendants' guilt as aiders and abettors does not alter the nature of the offense charged or the proof requisite to establish guilt of such offense, and therefore where the evidence introduced by the State conforms to the solicitor's announcement but nevertheless tends to show that each defendant was present and that each, successively, raped the prosecutrix in the course of one series of acts and pursuant to the same plan of action, the court properly charges the jury upon the law of aiding and abetting arising on the evidence.

**21. Criminal Law § 9—**

Persons who are present, aiding and abetting each other in the perpetration of an offense, are equally guilty with the actual perpetrator of the crime.

APPEAL by defendants from *Gambill, J.,* at the 16 August 1965 Criminal Session of GUILFORD, docketed as No. 657 at Fall Term 1966.

The defendants are brothers. Each was charged in five separate indictments with the following offenses: Kidnapping; rape of the girl alleged to have been kidnapped; and aiding and abetting in her rape by each of his two brothers and by Benny McKinney, their first cousin. McKinney was similarly charged but has not yet been brought to trial. All of the offenses are alleged to have occurred on the night of 5 December 1964 in Guilford County.

In due time separate counsel were appointed to represent John Overman and Harvey Overman. Gary Overman was represented at and prior to trial by his self-employed counsel, the same counsel being thereafter appointed by the trial court to represent him upon this appeal, this defendant being then found by the court to be indigent.

In due time Gary Overman entered a plea in abatement to the indictments against him, in which plea he alleged that Randolph County was the proper venue. The record states that this plea in abatement was heard and denied prior to the making of a general appearance by Gary Overman, but does not show what evidence, if any, was introduced at that hearing.

Also in due time, each defendant moved that the indictments against him be tried separate from those against his brothers, alleging that the consolidation for trial of the charges against him with those against his brothers would be prejudicial to him. These motions were denied.

At the 10 May 1965 Criminal Session, the indictments against

the three Overmans charging them with kidnapping the girl were tried together. The jury found Harvey and John Overman guilty of assault upon a female, and Gary Overman guilty of simple assault, he being less than 18 years of age. Thereupon sentences, within the limits prescribed by the statutes governing such offenses, were pronounced upon the respective defendants. From these judgments none of the defendants perfected an appeal.

The State moved to consolidate for trial the three indictments charging the three Overman brothers, respectively, with rape. The motion was allowed over the objection of the defendants. The cases, so consolidated, were calendared for trial at the 16 August 1965 Criminal Session.

In due time, each of the Overmans entered a plea of former jeopardy to the indictment charging him with rape. The basis of each such plea was that the defendant had been previously tried upon the indictment charging him with kidnapping the girl and, at such trial, had been convicted of an assault upon her, which assault was part of the same transaction out of which arose the charge of rape. The plea of each defendant was overruled, the court refusing to submit to the jury an issue tendered by such defendant as to such alleged former jeopardy.

Each defendant thereupon moved for a bill of particulars "as to the acts that the State relies on for a conviction of the crimes alleged in the various Bills of Indictment on the calendar." The record states that thereupon "the Solicitor for the State announces that he is calling for trial only cases Nos. 447, 481 and 487, charging the defendants with the crimes of rape, and that he is not relying on aiding and abetting in the crime of rape as to any of the three defendants, and that the evidence as to each will be the same as in the former trial of each charging kidnapping." The court denied each motion for a bill of particulars.

In the course of the trial, the court ordered that the transcript of the testimony in the trial for kidnapping be made part of the record in this case. There is no indication that such transcript was submitted to or considered by the jury in the trial of the rape case. This transcript shows that the judge who presided at the trial of the rape case also presided at the trial of the kidnapping case. The evidence introduced by the State at the two trials was substantially identical, the court, at the kidnapping trial, permitting the jury to consider the testimony as to what was done to the girl, following her alleged abduction, for the sole purpose of determining whether the abduction was or was not by force, instructing the jury at that trial:

"The State argues and contends that what happened after the kidnapping is not part of the kidnapping; and the Court charges you that if you find from the evidence and beyond a reasonable doubt that [the girl] was put in the car, as contended by the State, that what happened after that is not part of the kidnapping, but you will only consider that as bearing upon whether or not [the girl] got in the car voluntarily of her own will or whether or not she was forced in the car by the other parties, bearing upon the felonious intent. * * *

"The Court also charges you that if she went in the car voluntarily, if you find that she did, if she went in the car voluntarily, even though she was ravished or raped after she got in the car, that did not mean they would be guilty of kidnapping, that is not part of the kidnapping. * * * What went on after she got in relates to her getting in voluntarily or by force or upon the intent of the defendants, the intent with which she was placed in the car, whether it was wilfully and unlawfully and feloniously."

Prior to the trial of the kidnapping case, John Overman and Harvey Overman each moved to quash all indictments against him arising out of the alleged events of 5 December 1964, for the reason that he had not been given a preliminary hearing and thus had not been afforded an opportunity to be confronted by his accusers. Each motion was denied.

Harvey Overman, prior to the trial of the rape cases, moved that he be furnished by the court, at public expense, with a transcript of the evidence at the trial of the kidnapping cases "as a necessary step in the preparation of his trial in T.D. 1271 [still another indictment] for the alleged kidnapping of Douglas Kennedy," the girl's companion. No ruling on this motion is shown in this record. There is nothing to indicate that such transcript was so furnished to Harvey Overman.

Each of the Overmans thereupon pleaded "not guilty" to the indictment charging him with rape. Thereupon, a jury was selected and the judge ordered the jury to be empaneled. The solicitor then proceeded to empanel the jury as to each defendant, the wording of the empanelment being proper. Each defendant excepts, contending that the empaneling of the jury must be done by the clerk.

The trial then proceeded and continued for ten days, the State offering evidence consisting of the testimony of the girl, her mother, Douglas Kennedy, who was her companion immediately prior to the alleged abduction, the physician who attended her immediately after the alleged offenses, Benny McKinney, the first cousin and alleged accomplice of the defendants, and investigating police offi-

cers. This testimony, which was in great detail, was sufficient, if true, to show:

The girl, 16 years of age and weighing about 95 pounds, went with some other girls to a public dance hall in rural Guilford County on Saturday night, as she had done on many other occasions. There she met friends, including Douglas Kennedy, whom she frequently met there. After dancing a while, he and she went out to his automobile in the parking lot, which was well lighted. As they sat there talking, John and Harvey Overman came to the car. It was then about 10:30 p.m., and the night was dark and rainy. Neither she nor any of the Overmans had ever seen each other before. John and Harvey Overman asked Douglas Kennedy to drive them to another dance hall, a short distance down the highway, offering to pay him for doing so. He agreed to do so without charge and they got in the back seat of the Kennedy automobile. After they left the parking lot, John Overman put a knife to Kennedy's throat and Harvey put one to the girl's throat. She was frightened. They told Kennedy to drive as they instructed. He, pursuant to their orders, drove down the highway to a dirt road and turned onto it. John and Harvey Overman then climbed over into the front seat and John took over the driving of the car.

Thereafter, John stopped the Kennedy car at a lonely, unlighted place on the dirt road, which place was well within Guilford County. Immediately, a 1952 or 1953 light green Ford automobile, later identified as belonging to the mother of the defendants, drove up and stopped a few feet behind the Kennedy car. John and Harvey Overman thereupon pushed Douglas Kennedy over into the back seat of the Kennedy car, from which he jumped out and ran away, going to a house some distance away, from which he called the police.

After Kennedy fled from the scene, John and Harvey Overman took the girl by the arms, pulled her out of the Kennedy car and, over her protest, put her in the back seat of the Overman automobile, which was driven by Gary Overman with Benny McKinney as a passenger.

Gary Overman then drove off in the Overman car with the girl and John Overman in the back seat, and Harvey Overman and Benny McKinney in the front seat. While the automobile was in motion upon one or more unidentified roads, and at places not specifically identifiable by the girl, she being held down upon the rear seat, the four men, in succession, got into the back seat of the car and had sexual intercourse with the girl.

When John and Harvey pulled the girl out of the Kennedy car and put her in the Overman car, she tried to get away but John and

Harvey would not permit her to do so, each holding her by an arm. She begged them to let her go and not to do anything to her. As soon as they got in the Overman car, John Overman started ripping off her clothes and threatened to kill her, telling her she would not be harmed if she did as she was told.

Thereafter, the Overman car ran into and became stuck in the side ditch. Leaving John in the car with the girl, the other three men got out and Harvey went to get help to pull the car out of the ditch. While this was going on, Benny McKinney, who had been in a drunken stupor at the time the girl was put in the Overman automobile, asked Gary how she got in the car. Gary told him, "Marvin [John] and Harvey took a knife to the boy and forced the girl into the car."

John Overman, while the unknown person or persons were present pulling the car out of the ditch, lay upon the back seat in front of the girl, held a knife on her and told her that if she opened her mouth he would kill her. At another time, while Harvey was in the back seat of the car with the girl, one of the men said, "Why don't we just cut her throat?" While the attack by Harvey upon the girl was in progress, Benny McKinney, who was then in the front seat of the car, heard John tell Harvey, "If she didn't shut her damn mouth to slice her throat." In reply the girl said, "Oh, no, don't kill me."

Although the girl complied with their orders throughout each of the several acts of intercourse, she did not voluntarily engage in those relations. After they were completed, she was permitted to put some of her clothes back on and the car was driven to a service station, which was well lighted. When the attendant came to put gas in the car tank, she was sitting in the back seat with Harvey, who held a knife at her throat or her stomach and told her, "If you cry out, I'll kill you." She was afraid that he would kill her and did not say anything to the attendant.

After leaving the service station, which was in Randolph County, the men inquired of the girl as to where she lived. They then took her to her home and allowed her to get out of the car, whereupon they drove off. As they left, she ran into the house screaming. It was then approximately 2:30 a.m., four hours after she left the dance hall. She told her parents the license number of the light green Ford immediately and repeated this information to the police when they arrived. They identified the car as the Overman automobile and officers were sent to the vicinity of the Overman home to watch for it.

Approximately an hour later, the officers on watch saw the car go into the driveway of the Overman home. Driving as fast as pos-

sible in the police car up to and behind the Overman car, they found therein John and Harvey lying down in it, but not Gary. The light inside the Overman car did not come on when the door was opened, and the Overman car was not within the range of the head-lights of the police car at all times as the latter vehicle raced into the driveway.

John Overman and Harvey Overman offered no evidence. Gary Overman testified in his own behalf, his defense being an alibi. He testified that he had been riding in the automobile with his broth-ers and Benny McKinney earlier in the evening, but had left them and returned to his mother's residence about 10:30, which was the time the above events began. He testified that when he got home he went to his bedroom and to sleep. Subsequently, he was awakened by the noise of "a bunch of cars stopped and started." He looked out of his bedroom window and saw two or three police cars outside and observed his mother's car being driven away. Without making any inquiry or attempting to arouse other occupants of the house, he simply lay back down and went to sleep, explaining, "I didn't figure it was my business." When he next awakened, the police were knocking on his bedroom door. They took him to jail.

Other witnesses for Gary Overman testified to his good char-acter. No other witness corroborated his testimony as to his absence from the scene of these occurrences.

John Overman and Harvey Overman, having offered no evi-dence, moved that their counsel be permitted to have the closing argument to the jury. This motion was denied and the State made the opening and closing arguments. In the course of the opening argument, the assistant solicitor, over objection, referred to the size of Harvey Overman in comparison to the size of the girl.

At the time of the testimony of the girl and of Douglas Kennedy concerning the events at the parking lot of the dance hall, and on the ride from it to the place where she was put in the Overman car, the court instructed the jury that it was not to consider this evidence as against Gary Overman, no connection of those events with him having then been shown. At the close of all the evidence, the court instructed the jury that they would consider all of such evidence with reference to Gary Overman also for whatever the jury might find such evidence tended to show. To this Gary Overman excepted.

The trial lasted ten days. At the conclusion of a detailed charge, the jury retired to its room to commence its deliberations at 5:22 p.m. Approximately one and a half hours later, it returned to the courtroom and reported that it had been unable to reach a verdict. The court permitted the jurors to go home for the night, to which there was no objection. The jury resumed its deliberations the next

morning and, after a little over an hour, returned to the courtroom and announced it was "hopelessly deadlocked." The court, after telling the jury that if it could not reach a verdict the cases would have to be tried over again, said:

> "A verdict of the jury, Gentlemen of the jury, is a unanimous verdict of twelve people reasoning together, not the verdict of eleven, not the verdict of eight, but the verdict of twelve people, unanimous, reasoning together. Now I do not ask anyone to compromise your convictions or do violence to your conscience but the court will ask you to go back and see if you cannot reach a verdict in these cases."

One hour later the jury returned to the courtroom reporting that it was still "hopelessly deadlocked." The court then stated:

> "I don't want to punish you in any way or do anything that would irritate you but you have only been out now about four hours. This case has taken considerable time to try. I am going to let you go back and see if you can make up your mind."

At the jury's request, it was permitted to recess for lunch before returning to the jury room. Following this recess it resumed its deliberations. One hour and 15 minutes later it returned a verdict, as to each defendant, of "guilty of rape with a recommendation of life imprisonment in State's prison," the total time spent in the jury room being five hours and 12 minutes. Judgment was rendered as to each defendant in accordance with the verdict.

*Attorney General Bruton and Deputy Attorney General McGalliard for the State.*
*E. L. Alston, Jr., for Harvey Clayton Overman.*
*Percy L. Wall for John Marvin Overman.*
*Clyde T. Rollins for Gary David Overman.*

LAKE, J.  There is no merit in the exception by Gary Overman to the denial of his plea in abatement, the ground of which plea was that the offense, if it occurred, occurred in Randolph County and, therefore, Randolph County was the proper venue.

The record shows only: "This plea in abatement was filed, heard and ruled on prior to the making of any general appearance by Gary David Overman. The plea was denied. Defendant excepts." Since the plea relates also to the indictment charging kidnapping, it appears that it was heard and denied prior to the trial of that charge. The record being silent as to the nature of the hearing upon this plea and as to what evidence was offered and received,

the presumption is that the procedure in the court below was regular and free from error. *State v. Mullis*, 233 N.C. 542, 64 S.E. 2d 656.

The evidence of the State at the trial of this action shows clearly, and without contradiction, that the place at which the girl was forced from the car of her original companion into the car of the Overmans, which latter car was driven by Gary Overman, was on a dirt road well within the boundaries of Guilford County. It clearly indicates that the first rape of the girl began immediately after she was put into the Overman car and that the subsequent rapes occurred in somewhat rapid succession. It was "a long time" after the car had been pulled out of the ditch that the girl observed a recognizable point in Randolph County. It is further noted that this plea in abatement was filed by Gary Overman, whose defense at the trial was that he was not present when these events occurred. John Overman and Harvey Overman did not contest the venue.

G.S. 15-134 provides that in the prosecution of all offenses it shall be deemed and taken as true that the offense was committed in the county alleged in the indictment unless the defendant denies the same by plea in abatement. This statute does not state which party has the burden of proof if such plea is filed. At common law, the burden of proof was upon the State to prove that the offense occurred in the county named in the bill of indictment. *State v. Oliver*, 186 N.C. 329, 119 S.E. 370. With reference to this statute, Ashe, J., speaking for the Court in *State v. Mitchell*, 83 N.C. 674, said:

> "The mischief intended to be remedied by it was the difficulty encountered by the Court in effecting the conviction of persons who had violated the criminal law of the State where the offense was committed near the boundaries of counties which were undetermined or unknown. And it often happened that, where the boundaries were established and known, it was uncertain from the proof whether the offense was committed on the one or the other side of the line, and, in consequence of the uncertainty and the *doubt* arising from it, offenders went 'unwhipped of justice.' This was the evil intended to be remedied."

The statute should be construed to accomplish this purpose. We, therefore, hold that there is no error in overruling Gary Overman's plea in abatement, there being nothing in this record to show that he offered any evidence which would support a finding that the offense with which he is charged occurred in a county other than Guilford, as charged in the indictment.

Each of the defendants assigns as error the denial by the court of his plea of former jeopardy and the refusal of the court to submit

to the jury an issue with reference to such plea. There is no merit in these assignments of error.

The theory of the pleas of former jeopardy is: Each defendant was previously tried under the indictment charging him with kidnapping this girl on the same evening on which the alleged rapes occurred; upon that trial John and Harvey Overman were convicted of an assault upon a female, and Gary Overman was convicted of a simple assault, he being less than 18 years of age; assault upon a female and simple assault are offenses included within the offense of rape; consequently, the defendants have each been already put in jeopardy for an offense included in the offense with which they are now charged.

It is elementary that a continuous series of acts by a defendant, all occurring on the same date and as parts of one entire plan of action, may constitute two or more separate criminal offenses. See *State v. Bruce,* 268 N.C. 174, 184, 150 S.E. 2d 216. The fact that a defendant has been previously put in jeopardy upon an indictment charging one such offense does not, necessarily, bar a subsequent prosecution upon an indictment charging a different offense committed in the course of the same series of acts and pursuant to the same plan of action. *State v. Barefoot,* 241 N.C. 650, 86 S.E. 2d 424.

When one is placed in jeopardy under a valid indictment, he is then in jeopardy with reference to every offense of which he might lawfully be convicted under that indictment, and no other. He may not thereafter be put in jeopardy for any offense of which he could lawfully have been convicted under that indictment. *State v. Birckhead,* 256 N.C. 494, 124 S.E. 2d 838, 6 A.L.R. 3rd 888.

A defendant indicted for a criminal offense may be convicted, under that indictment, of the offense charged therein or of any lesser offense, all of the essential elements of which are included within the offense so charged in the indictment and all of which elements could be proved by proof of the facts alleged in the indictment. He may not, upon his trial under that indictment, be lawfully convicted of any other criminal offense, whatever the evidence introduced against him may be. *State v. Rorie,* 252 N.C. 579, 114 S.E. 2d 233; 27 Am. Jur., Indictment and Information, § 194; Wharton, Criminal Law and Procedure, § 1799.

The test of former jeopardy is not whether the two offenses were committed in the same series of acts, pursuant to the same plan of action. The test is whether the defendant could have been lawfully convicted, under the former charge, of any offense of which he might, but for the former proceeding, be now convicted under the present indictment. *State v. Birckhead, supra; State v. Barefoot, supra; State v. Leonard,* 236 N.C. 126, 72 S.E. 2d 1, cert.

den., 344 U.S. 916; *State v. Williams*, 229 N.C. 415, 50 S.E. 2d 4; *State v. Midgett*, 214 N.C. 107, 198 S.E. 613.

If each of two criminal offenses, as a matter of law, requires proof of some fact, proof of which fact is not required for conviction of the other offense, the two offenses are not the same and a former jeopardy with reference to the one does not bar a subsequent prosecution for and conviction for the other. *State v. Birckhead, supra; State v. Stevens*, 114 N.C. 873, 19 S.E. 861. Where, as in *State v. Bell*, 205 N.C. 225, 171 S.E. 50, the prosecution, under the second indictment, proceeds upon the theory that the offense charged therein was committed by means of another offense for which the defendant has previously been put in jeopardy, as where an indictment for murder charges that the murder was committed in the commission of another felony, for which the defendant has been previously tried and acquitted, the State has made the first alleged offense an element of the second and the defense of former jeopardy bars the subsequent prosecution. This result does not follow where the offense charged upon the former proceeding is neither an element of nor the means by which the offense subsequently charged was committed. Obviously, a former conviction or acquittal of an offense does not bar a subsequent prosecution under an indictment charging a totally different offense of the same kind, even though the two are separated by a narrow interval of time or place.

The offense of kidnapping and the offense of rape are obviously not the same, each having essential elements which are not component parts of the other. Though rape may be the motive for a kidnapping, the kidnapping is not the means by which the crime of rape is committed so as to bring such a case within the rule of *State v. Bell, supra*. See *State v. Bruce, supra*, at page 184.

The argument that assault and assault on a female are essential elements of rape and since these defendants were convicted of assault and assault on a female, respectively, when tried under the indictment for kidnapping, they have been formerly in jeopardy with reference to the offenses now charged in the indictments for rape, is ingenious but without merit. In the first place, notwithstanding *State v. Marks*, 178 N.C. 730, 101 S.E. 24, a simple assault is probably not, and an assault on a female is certainly not, an essential element of the crime of kidnapping, since the victim of a kidnapping need not be a female and may be enticed away by fraud rather than forced by violence or threat to accompany the abductor. See *State v. Gough*, 257 N.C. 348, 126 S.E. 2d 118, 95 A.L.R. 2d 441. The defendants did not appeal from their convictions of assault at the trial for kidnapping. Secondly, the transcript of the trial of the kidnapping case, which is part of the record in this action, though not sub-

mitted to the jury herein, shows that the jury was explicitly instructed at that trial that it might not convict the defendant in that action of an assault except as an incident to the alleged kidnapping. The jury at the kidnapping trial was instructed that the evidence there admitted as to what occurred after this girl entered the Overman car was to be considered by them only for the purpose of determining whether her going with the defendants to and into that vehicle was voluntary. These defendants have not been tried upon a charge of assault after the girl's entry into the Overman car.

The pleas of former jeopardy were, therefore, properly overruled. As stated by Higgins, J., in *State v. Barefoot, supra:* "This result is apparent as a matter of law. When no issues of fact are involved as to the identity of the parties or of the offenses, the question of jeopardy is to be decided by the court." There was no error in the refusal to submit the issue of former jeopardy to the jury.

Although none of the defendants has asserted that his present prosecution under the indictment for rape violates his rights under the Constitution of the United States, it is to be noted that the Supreme Court of the United States in *Hoag v. New Jersey,* 356 U.S. 464, 78 S. Ct. 829, 2 L. ed. 2d 913, *rehear. den.,* 357 U.S. 933, said "We do not think that the Fourteenth Amendment always forbids States to prosecute different offenses at consecutive trials even though they arise out of the same occurrences. The question in any given case is whether such a course has led to fundamental unfairness." To the same effect, see *Ciucci v. Illinois,* 356 U.S. 571, 78 S. Ct. 839, 2 L. ed. 2d 983. We find no such unfairness in the State's election to separate for trial the charges of kidnapping and rape.

There was no error in the denial of the motion by each defendant for trial separate and apart from his two brothers on the charge of rape. See: *State v. White,* 256 N.C. 244, 123 S.E. 2d 483; *State v. Spencer,* 239 N.C. 604, 80 S.E. 2d 670; *State v. Combs,* 200 N.C. 671, 158 S.E. 252. While the three indictments charge successive acts of rape, the trial proceeded on the theory, known to the defendants and the court in advance, as a result of the earlier trial on the kidnapping charges, at which the same judge presided, that these separate acts were substantially contemporaneous and that all three defendants were present when each of the offenses was committed. Gary Overman contends, as the basis of his motion for separate trial, that evidence admitted properly against his two brothers was not competent as to him. This contention is also without merit.

It was not error for the court to instruct the jury that it might consider as against Gary Overman evidence, previously admitted

only as against the other two defendants, concerning events at the parking lot of the dance hall and on the ride from there to the point at which the girl was placed in the Overman car. At the time this testimony was given, it had not been connected with Gary Overman, and the jury was properly instructed not to consider it as to him. Subsequently, the State introduced evidence to the effect that Gary Overman was driving the Overman car, with his brothers as passengers, immediately prior to the events in the parking lot, that he, driving the Overman vehicle, pulled up behind the Kennedy car immediately after his brothers, with the girl and Kennedy therein, stopped it on a dark and lonely country road some two miles from the original point of departure and that he, shortly thereafter, was able to explain to Benny McKinney how the girl came to be in the Overman car. This is enough connection with the events at the parking lot and during the journey from it in the Kennedy car to permit the jury to consider this evidence as bearing upon Gary Overman's guilty knowledge and intent in connection with the offense of rape with which he is charged.

Again, there is no merit in Gary Overman's exception to the ruling permitting the girl to testify that she did not voluntarily engage in sexual relations with any of the defendants at any time during the night in question. His contention that this was an expression of opinion by a witness which invades the province of the jury is obviously unsound. This was not an expression of opinion. It was a statement of fact by the only person in all the world who had actual knowledge of the fact in question. It was, of course, for the jury to determine whether her testimony as to that fact was true or false. The jury determined that it was true.

There was no error in the denial of the motion by John Overman and Harvey Overman to quash the indictment against them because of failure to afford them preliminary hearings. "A preliminary hearing is not an essential prerequisite to the finding of an indictment in this jurisdiction." *State v. Hargett*, 255 N.C. 412, 121 S.E. 2d 589.

Likewise, there was no error in the present case by reason of the court's denial of Harvey Overman's motion that he be furnished, at public expense, with a transcript of the evidence at the trial of the kidnapping case. It is a sufficient answer to this assignment of error in this case to note that the record shows his motion was that he be furnished with such transcript "as a necessary step in the preparation of his trial in T.D. 1271, for the alleged kidnapping of Douglas Kennedy," not for use in his trial on the present charge of rape.

The defendants also assign as error the denial by the court of their motion for a bill of particulars. There is no merit in these assignments. "The function of a bill of particulars is (1) to inform the defense of the specific occurrences intended to be investigated on the trial, and (2) to limit the course of the evidence to the particular scope of inquiry." *State v. Lea,* 203 N.C. 13, 164 S.E. 737. The motion for a bill of particulars is addressed to the discretion of the trial court. G.S. 15-143; *State v. Wadford,* 194 N.C. 336, 139 S.E. 608. Obviously, there was no abuse of discretion in the denial of these motions in view of the solicitor's statement in response thereto that "the evidence as to each will be the same as in the former trial of each charging kidnapping." A comparison of the two transcripts shows no substantial difference in the testimony at the two trials.

All of the defendants assign as error that, pursuant to the direction of the trial judge that the jury be empaneled, the solicitor, rather than the clerk, proceeded to do so. The language of the empaneling procedure was correct. The ceremony was performed in the presence of the trial judge and all of the defendants. This was not error. See *State v. Ferrell,* 205 N.C. 640, 172 S.E. 186. "In the absence of a statutory provision, all proceedings with relation to the formation of the trial jury are left to the discretion of the court." 50 C.J.S., Juries, § 286. The brief of John and Harvey Overman states, "When the jury was selected it was, by order of the Judge Presiding, empaneled by the Solicitor for the State."

All of the defendants assign as error the denial of their respective motions for judgment of nonsuit at the close of the State's evidence and again at the close of all the evidence. There is no merit in these assignments of error. It is elementary that upon such motion the evidence of the State is to be considered in the light most favorable to it and contradictions, if any, in the testimony of the State's witnesses are to be disregarded. *State v. Thompson,* 256 N.C. 593, 124 S.E. 2d 728; *State v. Bass,* 255 N.C. 42, 120 S.E. 2d 580.

There was positive testimony by the girl and by Benny McKinney that Gary Overman was present from the time the girl was put in the Overman car until she was allowed to get out of it in front of her home. There was positive testimony by the girl of every element of the crime of rape by each of the three defendants personally. By rigorous cross examination of the girl by each defendant, they sought to show that she consented to these acts or, at least, that they were committed without force. In *State v. Johnson,* 226 N.C. 671, 40 S.E. 2d 113, Stacy, C.J., speaking for the Court, said:

"'Rape is the carnal knowledge of a female forcibly and against her will.' * * * 'By force,' however, is not necessarily meant by actual physical force. * * * Fear, fright, or duress, may take the place of force. [Citation.] The case is replete with evidence that the prosecutrix submitted 'on account of fear' and after the defendant had threatened to kill her or to do her great bodily harm, if she resisted. Indeed, the circumstances themselves were terrifying. The prosecutrix and her companion had been held up and robbed in the middle of the night by two strange men whom they regarded as desperadoes."

In the present case, the testimony of the girl, the young man who was her companion at the dance hall, and Benny McKinney, the companion of the defendants, is clear and explicit to the effect that knife blades were held to the throat of the girl and her companion on the ride from the dance hall to the point where she was put by force into the Overman car, at which place her companion fled. A 95 pound, 16 year old girl was then left alone in an automobile with four strange men, armed with knives, on a lonely country road many miles from her home, in the middle of the night. The testimony of the girl is explicit that she begged the defendants to release her and not to do anything to her, that they told her she would not be hurt if she did as they ordered, and that while Harvey was in the back seat of the car with her, one of the other men said, "Why don't we just cut her throat?" Benny McKinney testified that while the attack upon the girl by Harvey was in progress, John told Harvey, "If she didn't shut her damn mouth to slice her throat." The girl testified that, when they subsequently stopped for gasoline at a filling station, Harvey held an open knife at her throat or stomach and told her he would kill her if she cried out.

If this is not sufficient evidence to carry the case to the jury on the question of consent and force, it would be difficult to imagine a case that would satisfy that requirement. It is apparent, from their cross examination, that the defendants sought to infer the girl's consent to the sexual relations with her by these men from the girl's testimony that she went with her girl companions, but with no male escort, to a dance hall on Saturday night, she having been there on other occasions to meet friends, including the young man who was her companion at the time of the abduction by John and Harvey Overman. The fact that a woman goes, without proper escort, to a place where men of low morals might reasonably be expected to congregate does not establish her consent to have sexual relations with them, although it is competent evidence to be considered by the jury on that question. It was so considered by the jury in this

case. The jury rejected the defendants' inferences therefrom. Contributory negligence by the victim is no bar to prosecution by the State for the crime of rape.

Though John and Harvey Overman offered no evidence, Gary Overman did testify and offered other witnesses in his defense. Under these circumstances, it was not error for the judge to deny John and Harvey Overman the closing argument to the jury. *State v. Smith,* 237 N.C. 1, 23, 74 S.E. 2d 291; *State v. Robinson,* 124 N.C. 801, 32 S.E. 494.

Harvey Overman assigns as error the fact that, though he did not take the stand as a witness, the assistant solicitor in the opening argument to the jury commented upon the size of Harvey Overman as compared with the size of the girl. There was no error in permitting the assistant solicitor to do so. Harvey Overman was present in the courtroom throughout the trial, was pointed to in the presence of the jury by the girl, and stood confronting the jury when it was empaneled. In Stansbury, North Carolina Evidence, § 119, it is said that the jury "may look upon the prisoner, although he is not in evidence, to estimate his age." There was nothing offensive or inflammatory in the remark of the solicitor to which this exception is directed.

All of the defendants assign as error the remarks of the court to the jury on the two occasions when the jury returned to the courtroom and reported that it was "hopelessly deadlocked," on each of which occasions the court sent the jury back for further deliberations, making the remarks quoted in the statement of facts. The defendants contend that this was a coercion of the jury and an intimation of the court's opinion that the jury should find the defendants guilty. We find in the language of the court no intimation of what verdict the judge thought would be proper. There was nothing to indicate how the jury was divided numerically or upon what question. So far as the record discloses, the reported "deadlock" may have been upon the question of whether to recommend life imprisonment rather than the death penalty.

The trial lasted for ten days. There is no reason to suppose that a second trial would not have consumed an equal amount of time. The jury first reported itself to be in disagreement after approximately two and one-half hours of deliberation. Its total deliberation consumed slightly more than five hours. This is not an undue time for deliberation upon the life or death of three men in a case of this length. Of course, the judge should leave the jury "free and untrammeled to find the facts," but the test of this is whether "[t]he language of the court addressed to the jury was * * * subversive

of that freedom of thought and of action so very essential to a calm, fair, and impartial consideration of the case." *State v. Windley,* 178 N.C. 670, 673, 100 S.E. 116. The language of the trial judge in this case did not overstep those bounds.

It is to be remembered that this was a capital case. It was originally the rule in this State that one could not again be brought to trial in a capital case after a jury has been discharged without rendering a verdict. *State v. Garrigues,* 2 N.C. 241. While this is no longer the law of this State, a mistrial in a capital case should not be allowed without careful consideration. *State v. Crocker,* 239 N.C. 446, 80 S.E. 2d 243. There was no coercion of the jury involved or suggested in the request of the trial judge that it resume its deliberations or in his reminder to its members that they should reach an agreement if they could do so without a compromise of conviction and without doing violence to their consciences. See *State v. Green,* 246 N.C. 717, 100 S.E. 2d 52; Strong, N. C. Index, Criminal Law, § 116, supplement.

All of the defendants assign as error the following portion of the charge of the court to the jury:

> "If others are present aiding and abetting in sexual ravishing then they would all be principals and equally guilty. In other words, gentlemen of the jury, if you find from the evidence and beyond a reasonable doubt that one of the defendants raped [the girl named in the indictment] as charged in the Bill of Indictment, that is, if the State has satisfied you from the evidence and beyond a reasonable doubt of every element, that is carnally knowing, forcibly and against her will, then, if one or more of the other defendants aided and abetted in that rape, they would be equally guilty whether they raped her themselves or not — whether they actually raped her themselves."

The foregoing statement was followed by a detailed instruction as to what constituted "an aider and abettor," the entire charge upon the subject of aiding and abetting being included in the assignments of error by the several defendants.

All of the defendants in their briefs concede that the charge of the court upon the subject of aiding and abetting was a correct charge insofar as the statement of the law upon that subject is concerned. We have, nevertheless, examined it carefully and find no error in it. These assignments of error are directed to the proposition that it was improper for the judge to instruct the jury at all upon the matter of aiding and abetting, or to permit the jury to con-

sider the guilt of any defendant as a principal in the second degree. The defendants so contend because of the statement by the solicitor at the hearing upon the defendants' motion for a bill of particulars "as to the acts that the State relies on for a conviction of the crimes alleged in the various Bills of Indictment on the calendar." The record shows with reference to that hearing of those motions:

> "The Solicitor for the State announces that he is calling for trial only cases numbers 447, 481 and 487, charging the defendants with the crimes of rape, and that he is not relying on aiding and abetting in the crime of rape as to any of the three defendants, and that the evidence as to each will be the same as in the former trial of each charging kidnapping."

The defendants contend that this statement "eliminated the necessity for a bill of particulars on indictments charging aiding and abetting, and amounted to a bill of particulars as to the indictment being tried."

The function of a bill of particulars is to inform the defendant of the nature of the evidence which the State proposes to offer. "A bill of particulars is not a part of the indictment, nor a substitute therefor, nor an amendment thereto," *State v. Wadford,* 194 N.C. 336, 139 S.E. 608.

We have held that when, upon arraignment, the solicitor announces that he will not insist on a verdict of the more serious offense charged in the bill of indictment but will seek only a verdict of a lesser offense included therein, the announcement is equivalent to a verdict of not guilty of the more serious offense and prevents the State from thereafter prosecuting the prisoner for it. *State v. Pearce,* 266 N.C. 234, 145 S.E. 2d 918. In the present case, however, the solicitor did not make such announcement. The defendants remained charged with the capital crime of rape. The announcement by the solicitor amounted to a bill of particulars but it did not change the offense charged, nor could it change the law of this State as to what proof is sufficient to establish the commission of that offense.

The evidence introduced by the State conformed to the solicitor's announcement. The defendant Gary Overman testified that he was not present when the alleged rape of the girl by the other men occurred. He testified that he had never seen this girl until after his arrest. The other defendants did not take the stand in their behalf, which was, of course, their right. There is no showing by any defendant of what he could have done in his defense, which he did not do, in reliance upon the foregoing statement by the solicitor.

It is, of course, well settled that one who is present, aiding and abetting, in a rape actually perpetrated by another, is equally guilty with the actual perpetrator of the crime. *State v. Johnson,* 226 N.C. 671, 40 S.E. 2d 113; *State v. Hall,* 214 N.C. 639, 200 S.E. 375. Upon this ground even a woman may be convicted of rape, and a husband of the rape of his wife. See *State v. Dowell,* 106 N.C. 722, 11 S.E. 525; *State v. Jones,* 83 N.C. 605. There is no merit in this assignment of error.

We have carefully examined other assignments of error relating to the court's review of the evidence and its instructions as to possible verdicts which might be returned by the jury and find no merit in any of these. Still other assignments of error are formal or relate to matters within the discretion of the trial judge.

No error.