STATE OF NORTH CAROLINA v. WILLIAM FRED CAMERON

No. 32

(Filed 11 April 1973)

1. Constitutional Law § 31— identity of confidential informer — disclosure not required

In a prosecution for possession and sale of heroin the trial court properly denied defendant's motion for disclosure of the identity of a confidential informer where the evidence which established the guilt of defendant was independent and did not rely on any facts provided by the informer, evidence on voir dire tended to show that defendant and the informer who accompanied the officer to defendant's home at the time of the sale were acquainted, and the informer was not present at the time of the actual sale of heroin.

2. Indictment and Warrant § 13— bill of particulars properly denied

Where all the information surrounding the commission of the crime was contained in the bills of indictment or could have been obtained by the defendant from an examination of State's witnesses, whose names had been given defendant, defendant failed to show any abuse of discretion in denial of his motion for a bill of particulars.

3. Criminal Law § 91— publicity concerning additional bills of indictment — no prejudice — continuance properly denied

Defendant failed to show abuse of discretion in the denial of his motion for continuance because of radio, television and newspaper publicity with respect to indictments returned against him for subsequent offenses while the trial for the present offense was in progress where it did not appear that any juror read or heard about the other charges against defendant or that any juror was influenced or prejudiced by this publicity; nor was defendant entitled to mistrial for the alleged prejudice resulting from the publicity.

4. Narcotics § 4— possession and sale of heroin — sufficiency of evidence

Where an officer testified that defendant had in his possession 15 bindles of a substance later determined to be heroin and that defendant sold these 15 bindles containing heroin to the officer for $60, evidence was suffcient to be submitted to the jury and to support verdicts of guilty of possession and sale of heroin.

5. Narcotics § 1— possession and sale of heroin — separate and distinct offenses

Unlawful possession and unlawful sale of heroin are illegal, and while possession may be a part of the sale, the possession may be

State v. Cameron

legal and the sale illegal; therefore, possession and sale of heroin are separate and distinct offenses.

**6. Criminal Law § 26; Narcotics § 5— conviction of possession and sale of heroin — no double jeopardy**

Since possession and sale of heroin are separate offenses, defendant was not subjected to double jeopardy where he was tried for both offenses arising out of the same transaction, found guilty of each and given consecutive sentences.

APPEAL by defendant from decision of the North Carolina Court of Appeals, reported in 17 N. C. App. 229, 193 S.E. 2d 485 (1972), finding no error in the trial before *Cooper, J.*, at the 17 April 1972 Session of DURHAM Superior Court.

Defendant, William Fred Cameron, known as Babe Cameron, was charged in separate bills of indictment with unlawful possession of a narcotic drug; to wit, 15 bags of heroin, and the unlawful sale of 15 bags of heroin to S. H. Conant, a Durham police officer, for $60, on 25 February 1971 in Durham County.

At defendant's trial only the State offered evidence. This evidence tended to show: On 25 February 1971 around 8:30 p.m., Officer Conant and an unnamed individual went to the residence of defendant at 1130 Elmo Street in Durham. The two men knocked on the door and were let in by a small child. They asked the child if Babe was at home, and the child answered, "Yes, come on it, he is in the back bedroom." They went through the kitchen, down a hallway to the back bedroom, and there saw defendant lying on a double bed watching television. After a short conversation, Conant asked defendant if he had any heroin and, if so, could he buy a half or 15 bindles. Defendant answered that he did have some heroin, then left the room, went up the hallway and out the front door. He was gone approximately a minute and when he returned he asked Conant if he had the money. Conant handed defendant six ten-dollar bills, and defendant then handed Conant 15 small packs of white powder, later found to contain heroin. During the time the money and the packs were being exchanged, the individual who accompanied Conant to defendant's home was not present in the room.

The jury returned a verdict of guilty of both the possession and sale of a narcotic drug, heroin. Defendant was sentenced to five years' imprisonment on each charge, the sentences to run consecutively. He appealed to the Court of Appeals, and

that court in an opinion by Judge Hedrick, concurred in by Chief Judge Mallard and Judge Morris, found no error. Defendant appealed to this Court pursuant to G.S. 7A-30(1).

*Attorney General Robert Morgan, Assistant Attorney General Charles M. Hensey, and Associate Attorney Henry E. Poole for the State.*

*William H. Murdock, Edward G. Johnson, and Norman E. Williams for defendant appellant.*

MOORE, Justice.

[1] Defendant first assigns as error the failure of the trial court to require the solicitor to disclose the name of the confidential informer who accompanied Officer Conant to defendant's home.

"It is the general rule, subject to certain exceptions and limitations . . . that the prosecution is privileged to withhold from an accused disclosure of the identity of an informer." Annot., 76 A.L.R. 2d 262, 271. "The privilege is founded upon public policy, and seeks to further and protect the public interest in effective law enforcement. It recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law enforcement officers, and by preserving their anonymity, encourages them to perform that obligation. The privilege is designed to protect the public interest, and not to protect the informer." *Id.* at 275. *Roviaro v. United States,* 353 U.S. 53, 1 L.Ed. 2d 639, 77 S.Ct. 623 (1957). The propriety of disclosing the identity of an informer depends on the circumstances of the case. *Roviaro v. United States, supra; State v. Moore,* 275 N.C. 141, 166 S.E. 2d 53 (1969); *State v. Boles,* 246 N.C. 83, 97 S.E. 2d 476 (1957).

We find in 76 A.L.R. 2d, at p. 283:

" . . . [T]he privilege of nondisclosure will be upheld where disclosure of the identity of an informer does not aid the defendant in regard to his defense, and is not essential nor relevant (material) for that purpose or for the fair disposition of the case. Important factors in this connection are that the accused admits or does not deny guilt, or makes no defense on the merits, or that there is independent evidence of accused's guilt."

See *State v. Fletcher* and *State v. St. Arnold,* 279 N.C. 85, 181 S.E. 2d 405 (1971); *State v. Swaney,* 277 N.C. 602, 178 S.E. 2d 399 (1970).

In the present case, defendant made no defense on the merits. The evidence which established the guilt of defendant was independent and did not rely on any facts provided by the informer. Furthermore, the trial court found as a fact on evidence offered on *voir dire* that, in the opinion of. Officer Conant, defendant and the person with the officer were acquainted. Based on this finding and the further finding that the unknown person was not present at the time of the actual sale of the heroin, the court concluded that the name of this person was not necessary to the defense of defendant's case. We hold that the trial judge properly denied defendant's motion to disclose the identity of the informer.

[2] Defendant next assigns as error the denial of his motion for a bill of particulars. G.S. 15-143 provides that when further information not required to be set out in the bill of indictment is desirable for the better defense of the accused, the court upon motion may in its discretion require the solicitor to furnish a bill of particulars. The function of a bill of particulars is to inform the defendant of the nature of the evidence which the State proposes to offer. *State v. Overman,* 269 N.C. 453, 153 S.E. 2d 44 (1967). The granting or denial of motions for a bill of particulars is within the discretion of the court and not subject to review except for palpable and gross abuse thereof. *State v. Spence,* 271 N.C. 23, 155 S.E. 2d 802 (1967); *State v. Porth,* 269 N.C. 329, 153 S.E. 2d 10 (1966); *State v. Overman, supra; State v. Lippard,* 223 N.C. 167, 25 S.E. 2d 594 (1943).

The indictments in this case contained the following information: (1) the name of the defendant, (2) the date on which the offenses occurred, (3) the type of illegal drug possessed and sold, (4) the name of the person to whom the illegal drug was sold, (5) the quantity sold, (6) the amount charged for the illegal drug, and (7) the county in which the illegal acts took place. Defendant was also furnished a list of the State's witnesses who might be called in the case. All the information surrounding the commission of the crime was contained in the bills of indictment or could have been obtained by the defendant from an examination of the State's witnesses. Under these circumstances, defendant has failed to show any abuse of discretion. This assignment is overruled.

State v. Cameron

[3]  On 12 April 1972, the date on which the present cases were calendared for trial, a special Durham County grand jury returned two bills of indictment against defendant, one charging him with possession of 700 bindles of heroin and the other for continuing criminal enterprise. The bills were returned just prior to the noon recess. Defendant was in the courtroom and was immediately arrested. The court then set bond in the amount of $200,000. The Durham Sun that afternoon carried a front page story concerning the two new bills of indictment against defendant. That same afternoon defendant moved for a continuance of the present cases on account of this adverse publicity. The motion was denied and defendant assigns this denial as error.

The trial judge, before the jury was selected, made the following statement to the jurors:

"Now, ladies and gentlemen of the jury, mostly ladies looks like, I mentioned to you yesterday afternoon before court closed that there was some publicity in the paper concerning Mr. Cameron about another matter, not the matter that is being tried here, and requested that you not read any newspaper so that it would not influence you. I asked you also not to listen to any radio reports or television matters.

*        *        *

"Now, as I told you yesterday, ladies and gentlemen, all we are interested in and the only reason for any of us being here is to see that people get a fair trial. That fair trial presupposes a jury that will base its verdict solely and entirely on two things, and two things alone: The first is the sworn testimony that comes from the witness stand; the second the instructions as to the law which the Court will give you in its charge.

*        *        *

"I do want to ask, however, if any of you heard or read anything concerning Mr. Cameron that would in any way influence or affect your verdict in this case. If any of you have, I wish you would please tell me now.

(No response)

"Do any of you know of any reason whatsoever whether you have been asked the question by the attorneys or by the Court, do any of you have any doubt in your mind at this point that you can give Mr. Cameron a completely fair and impartial trial on these charges which allegedly occurred last February, or February a year ago? Do any of you have any reservation at all?

(No response.)"

The presiding judge throughout the trial clearly and explicitly instructed the jurors that they were not to read any newspaper accounts or listen to television or radio comments concerning defendant. There is nothing to suggest that these instructions were not complied with by the jurors. In addition, and just before submitting the case to the jury, the trial judge inquired of the jurors if they had read or heard anything about defendant and, if so, had they been in any manner influenced by it. None indicated that he had.

"A motion for continuance is ordinarily addressed to the discretion of the trial judge and his ruling thereon is not subject to review absent abuse of discretion." *State v. Stepney*, 280 N.C. 306, 185 S.E. 2d 844 (1971) ; *State v. Stinson*, 267 N.C. 661, 148 S.E. 2d 593 (1966). In the present case, it does not appear that any juror read or heard about the other charges against defendant or that any juror was influenced or prejudiced by this publicity. Therefore, no abuse of discretion is shown, and defendant's assignment of error to the denial of his motion to continue is overruled.

Defendant further contends, however, that his motion for a mistrial made during the trial, based upon this same adverse publicity, should have been granted.

"As a general rule the allowance or refusal of a motion for mistrial in a criminal case less than capital rests largely in the discretion of the trial court." 3 Strong, N. C. Index 2d, Criminal Law § 128, p. 49, and cases therein cited. "In the absence of any showing of prejudice, no abuse of discretion is shown." *State v. McVay* and *State v. Simmons*, 279 N.C. 428, 183 S.E. 2d 652 (1971). *State v. Tippett*, 270 N.C. 588, 155 S.E. 2d 269 (1967). Error will not be presumed. *State v. Partlow*, 272 N.C. 60, 157 S.E. 2d 688 (1967) ; *State v. Shepherd*, 230 N.C. 605, 55 S.E. 2d 79 (1949) ; 3 Strong, N. C. Index 2d,

---

**State v. Cameron**

---

Criminal Law § 167, p. 127. In the present case no prejudice or abuse of discretion is shown. For the same reasons that the motion for continuance was denied, this assignment is overruled.

[4] Defendant next assigns as error the denial of his motions for nonsuit at the close of the State's evidence and at the close of all the evidence.

Officer Conant testified that defendant had in his possession 15 bindles of a substance later determined to be heroin and that defendant sold these 15 bindles containing heroin to Officer Conant for $60. This evidence is sufficient to be submitted to the jury and to support a verdict of guilty on both charges. Therefore, the motions for judgment as of nonsuit were properly denied. *State v. Roseman,* 279 N.C. 573, 184 S.E. 2d 289 (1971) ; *State v. Vestal,* 278 N.C. 561, 180 S.E. 2d 755 (1971) ; *State v. Miller,* 268 N.C. 532, 151 S.E. 2d 47 (1966).

[5, 6] Finally, defendant contends that possession of a narcotic drug is a lesser included offense of the sale of a narcotic drug and that consecutive sentences for separate convictions for possession and for sale constitute former jeopardy under both the North Carolina and United States Constitutions. Defendant contends that it is necessary to possess a drug in order to sell it and that possession and sale constitute a single criminal offense and permit only a single punishment.

In *State v. Ballard,* 280 N.C. 479, 482, 186 S.E. 2d 372, 373 (1972) Chief Justice Bobbitt speaking for the Court stated:

" 'It is a fundamental and sacred principle of the common law, deeply imbedded in our criminal jurisprudence, that no person can be twice put in jeopardy of life or limb for the same offense. [Citations omitted.] It was incorporated in the Bill of Rights of the Federal Constitution. (United States Constitution, Amendment V.) While the principle is not stated in express terms in the North Carolina Constitution, it has been regarded as an integral part of the "law of the land" within the meaning of Art. I, sec. 17 [now sec. 19]. [Citation omitted.]' *State v. Crocker,* 239 N.C. 446, 449, 80 S.E. 2d 243, 245 (1954).

"Overruling prior decisions, the Supreme Court of the United States held in *Benton v. Maryland,* 395 U.S. 784, 23

L.Ed. 2d 707, 89 S.Ct. 2056 (1969), that the double-jeopardy clause of the Fifth Admendment is applicable to the states through the Fourteenth Amendment. . . ."

Therefore, in this case Federal as well as State double jeopardy standards control the decision. The constitutional guarantee against former jeopardy also protects a defendant from multiple punishment for the same offense. *State v. Summrell,* 282 N.C. 157, 192 S.E. 2d 569 (1972). As was aptly stated in *North Carolina v. Pearce,* 395 U.S. 711, 23 L.Ed. 2d 656, 89 S.Ct. 2072 (1969) :

" . . . That guarantee has been said to consist of three separate constitutional protections. It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense. . . . "

The basic rule in North Carolina concerning former jeopardy is set out in 2 Strong, N. C. Index 2d, Criminal Law § 26, pp. 517-18:

"The test of former jeopardy is not whether the defendant has already been tried for the same act, but whether he has been put in jeopardy for the same offense. Hence, the plea of former jeopardy, to be good, must be grounded on the 'same offense,' both in law and in fact, and it is not sufficient that the two offenses grew out of the same transaction. If evidence in support of the facts alleged in the second indictment would be sufficient to sustain a conviction under the first indictment, jeopardy attaches, otherwise not. However, if proof of an additional fact is required in the one prosecution, which is not required in the other, even though some of the same acts must be proved in the trial of each, the offenses are not the same, and the plea of former jeopardy cannot be sustained. . . . "

These principles have been applied by this Court in a series of decisions to a set of factual situations so analogous to the instant case that they cannot be distinguished. Non-taxpaid liquor is a contraband, the possession, transportation and sale of which are unlawful. Similarly, narcotic drugs are contraband, the possession and sale of which are unlawful. The only difference is the nature of the contraband. This is a difference totally

without distinction for the purpose of analyzing the question presented in this case.

In *State v. Moschoures*, 214 N.C. 321, 199 S.E. 92 (1938), the defendant was charged in two counts in a bill of indictment with unlawful possession of liquor for the purpose of sale and unlawful sale of liquor. He entered a general plea of guilty and the trial judge imposed an active sentence on the first count and a suspended sentence on the second count. The defendant on appeal contended that the warrant only charged one offense and supported only one sentence. This Court, in a *per curiam* opinion, rejected the contention stating:

" . . . The first count clearly contains a charge of unlawful possession of intoxicating liquors for the purpose of sale and the second count a charge of unlawful sale of intoxicating liquors. C.S., 3411(b). These are distinct charges of separate offenses, and support the separate sentences imposed."

In *State v. Chavis*, 232 N.C. 83, 59 S.E. 2d 348 (1950), the defendant was convicted of (1) unlawfully possessing a quantity of non-taxpaid intoxicating liquors and (2) unlawfully transporting a quantity of non-taxpaid intoxicating liquors. It was asserted on appeal "that it is not competent to find the defendant guilty of two offenses and fix separate punishments therefor when the facts constituting the two purported crimes are identical, the possession being physically necessary to the act of transportation." This Court, in an opinion by Justice Seawell, rejected this contention and affirmed both convictions, stating:

"Two things will help us in our thinking: we are not dealing with common law crimes but with statutory offenses; and not with a single *act* with two criminal labels but with *component transactions* violative of distinct statutory provisions denouncing them as crimes. Neither in fact nor law are they the same. *State v. Midgett*, 214 N.C. 107, 198 S.E. 613. They are not related as different degrees or major and minor parts of the same crime and the doctrine of merger does not apply. The incidental fact that possession goes with the transportation is not significant in law as defeating the legislative right to ban both or either. When the distinction between the offenses is considered in the light of their purpose, vastly different social

implications are involved and the impact of the crime of greater magnitude on the attempted suppression of the liquor traffic is sufficient to preserve the legislative distinction and intent in denouncing each as a separate punishable offense."

*Chavis* was reaffirmed in *State v. Stonestreet,* 243 N.C. 28, 89 S.E. 2d 734 (1955), in which Justice Bobbitt (now Chief Justice) said: "When an indictment charges separately the unlawful possession and unlawful transportation of intoxicating liquor, a separate judgment may be pronounced on each count."

To like effect, in *Albrecht v. United States,* 273 U.S. 1, 71 L.Ed. 505, 47 S.Ct. 250 (1926), Mr. Justice Brandeis, writing for the Court, said:

" . . . The contention is that there was double punishment because the liquor which the defendants were convicted for having sold is the same that they were convicted for having possessed. But possessing and selling are distinct offenses . . . . There is nothing in the Constitution which prevents Congress from punishing separately each step leading to the consummation of a transaction. . . . "

The same rule was articulated in a recent Federal case concerning the violation of narcotic drug laws. Defendant had been convicted of illegally transporting narcotic drugs and of illegally possessing narcotic drugs. He received separate sentences for each conviction. In *Vincent v. Mosely,* 327 F. Supp. 975 (E.D. Mo. 1971), affirmed 453 F. 2d 1218 (8th Cir. 1972), he instituted a collateral attack on the separate sentences on the ground that there was one act of allegedly transporting a quantity of narcotic drugs from one state to another. He contended if the government proved transporting the drug, it would necessitate proving possession, and this would be one act, one offense, and should permit only one sentence. The court refused to disturb the sentence for possession stating:

"This argument is without tenable basis under the decision in *Gore v. United States,* 357 U.S. 386, 389, 78 S.Ct. 1280, 1283, 2 L.Ed. 2d 1405 (1958), which stated that 'The fact that an offender violates by a single transaction several regulatory controls devised by Congress as means for dealing with a social evil as deleterious as it is

difficult to combat does not make the several different regulatory controls single and identic.' ... "

In 72 C.J.S. Poisons § 8, p. 181, the rule is stated: "Illegal sale and illegal possession constitute two different crimes under statutes prohibiting sale and possession of poisons or drugs." *Cf. Kelley v. United States,* 275 F. 2d 10 (D.C. Cir. 1960); *Torres Martinez v. United States,* 220 F. 2d 740 (1st Cir. 1955).

Both New Jersey and Georgia have adopted a similar rule. In *State v. Booker,* 86 N.J. Super. 175, 206 A. 2d 365 (1965), the defendant had the narcotics on his person when he approached the buyer and made the sale. The Court held that these facts constituted two punishable offenses: possession and sale of narcotic drugs.

In *Gee v. State,* 225 Ga. 669, 171 S.E. 2d 291 (1969), defendant was convicted of the possession and the sale of the same quantity of amphetamine. Defendant challenged the conviction for possession on the ground of multiple punishment. The Court rejected this contention stating:

> "There are different elements present in the two crimes of selling and possessing the prohibited drugs. Proof of the illegal sale of the drugs would not prove the illegal possession of the drugs, since persons might legally possess the drugs who could not legally sell them. Proof of the illegal possession of the drugs would not prove the illegal sale of the drugs. Neither offense is a necessary element in, and constitutes an essential part of, the other offense. ... "

In North Carolina, G.S. 90-88 prohibits the possession and sale of narcotic drugs "except as authorized in this article." Subsequent sections of the Narcotic Drug Act authorize certain individuals to lawfully possess narcotic drugs. However, these same persons are not always authorized to sell the drugs which they lawfully possess. Consequently, one may be guilty of the illegal sale of a narcotic drug in violation of G.S. 90-88 even though he is in possession lawfully. Illegal possession is not, then, a necessary element of the offense of unlawful sale of a narcotic drug. Certainly, a sale involves an additional fact not required for possession. In *State v. Overman,* 269 N.C. 453, 153 S.E. 2d 44 (1967), Justice Lake stated:

> "If each of two criminal offenses, as a matter of law, requires proof of some fact, proof of which fact is not required for conviction of the other offense, the two offenses are not the same and a former jeopardy with reference to the one does not bar a subsequent prosecution for and conviction for the other . . . . "

See also *State v. Richardson,* 279 N.C. 621, 185 S.E. 2d 102 (1971).

A violation of G.S. 90-88 is a felony and is punishable by a maximum of five years' imprisonment. By setting out both the possession and sale as separate offenses in the statute and by prescribing the same punishment for possession and for sale, it is apparent that the General Assembly intended possession and sale to be treated as distinct crimes of equal degree, to be separately punished rather than providing that one should be a lesser included offense in the other.

The unlawful sale of a narcotic drug is a specific act and a given sale occurs only at one specific time. Unlawful possession, however, is a continuing violation of the law. It begins as soon as an individual first unlawfully obtains possession of the drug, whatever the purpose of that possession might be, and does not end until he divests himself of it. In this case defendant was violating the law in that he was possessing the heroin not only when he was in his house on the evening of the sale but from the time that he originally came into possession of it. This could have been one hour, one day, one week, or one month prior to the sale. The length of time makes no difference. He had been violating the law from the time he first took possession and control of the heroin. This was a continuing offense and was not a single act which occurred at the time of the sale. *State v. Roberts,* 276 N.C. 98, 171 S.E. 2d 440 (1969).

Defendant relies upon the case of *State v. Thornton,* 17 N.C. App. 225, 193 S.E. 2d 373 (1972). There the defendant was indicted for the possession and the sale of heroin. The Court of Appeals specifically held that the defendant could not be tried, convicted, and punished under both indictments, stating: "Upon the legal principles discussed in *State v. Summrell, supra* [282 N.C. 157, 192 S.E. 2d 569 (1972)], we hold that in the instant case two separate, distinct, and punishable crimes were not established." In *Summrell* defendant was charged in one warrant with resisting an officer and in another warrant he was

charged with assaulting an officer, each warrant specifying the same conduct of the defendant in resisting and in assaulting the officer.` Justice Sharp, speaking for the Court, stated: "The warrants themselves indicate duplicate charges. Each warrant included all the elements of the offense charged in the other, and each specified only acts of violence which defendant directed at the officer's person while he was attempting to hold defendant in custody." The Court then held that there was no error in the defendant's conviction for resisting an officer but that defendant's conviction for assaulting an officer should be vacated and the judgment arrested since defendant had been twice convicted and sentenced for the same criminal offense. Neither in the instant case nor in *Thornton* did each indictment include all the elements of the offense charged in the other, as was the situation in *Summrell*. The North Carolina Court of Appeals, therefore, erred in applying *Summrell* in the *Thornton* case and in holding that punishment of two consecutive terms for conviction of both possession and sale was unconstitutional as double jeopardy.

The North Carolina General Assembly has determined that the unlawful possession of heroin is illegal. The General Assembly has also determined that the unlawful sale of heroin is illegal.. While possession may be a part of the sale, the possession may be legal and the sale illegal; therefore, they are separate and distinct offenses. Neither in fact nor law are they the same. We hold, then, that in the instant case two separate, distinct, and punishable crimes were established, and that the court did not err in imposing consecutive sentences.

For the reasons stated, the decision of the Court of Appeals is affirmed.

Affirmed.