STATE OF NORTH CAROLINA v. JACK CONRAD GLEASON

No. 7418SC1004

(Filed 5 March 1975)

1. **Narcotics § 4.5— possession and sale of MDA — instructions — guilty knowledge**

In a prosecution for possession and sale of the controlled substance MDA, the evidence did not require the court to give instructions on guilty knowledge of either the fact of possession or of the fact of the narcotic character of the substance.

2. **Criminal Law § 169— exclusion of evidence — similar evidence admitted**

The exclusion of evidence was not prejudicial where evidence of the same import had already been admitted and the subject had been amply covered by other testimony.

3. **Criminal Law § 51; Narcotics § 3— qualification of expert — testimony that substance contained MDA**

State's witness was properly qualified as an expert in forensic chemistry to permit him to express his opinion, based on his chemical analysis of a substance allegedly purchased from defendant, that the substance contained MDA.

4. **Criminal Law § 42; Narcotics § 3— MDA — chain of custody**

Chain of custody of the controlled substance MDA purchased from defendant was sufficiently shown to permit its admission in evidence.

5. **Criminal Law § 97— reopening of State's case**

The trial court did not abuse its discretion in permitting the State to reopen its case after the State had rested but before defendant put on any evidence.

6. **Criminal Law § 26; Narcotics § 5— double jeopardy — possession and sale of same narcotics**

Defendant was not subjected to double jeopardy by his convictions for both the possession and sale of the same controlled substance.

APPEAL by defendant from *Rousseau, Judge.* Judgment entered 9 July 1974 in Superior Court, GUILFORD County. Heard in the Court of Appeals 13 February 1975.

Defendant was charged in a two-count bill of indictment with (1) possession and (2) the sale and delivery of 3, 4-methylenedioxy amphetamine (MDA), a controlled substance under Schedule I of the North Carolina Controlled Substances Act. At arraignment, the defendant pled not guilty to both counts.

The evidence for the State tended to show that an undercover vice squad officer, Detective Cobbler, went to the defend-

State v. Gleason

ant's residence on 1 March 1974; that he was invited inside where several other people were present; that the defendant came into the room, speaking to Cobbler asking him if he wanted the stuff; that they retired to a back room of the house; that on a table in the room was a large clear bag containing several small bags, each of which contained a white powder substance; and that the defendant, representing the powder to be real good MDA, sold a gram to Detective Cobbler for $30.00. Cobbler thereafter took the plastic bag to the office of the Greensboro Vice Division where he had it checked and packaged. He eventually locked it up in his own individual lockbox. Later, on 19 March, he turned the package over to a Detective Roy Riggs who in turn took it to the SBI chemical laboratory in Raleigh. There, Riggs personally handed the package to Dr. Charles McDonald, a chemist, who placed his file number and initials on the package and locked it up in his evidence locker until he eventually analyzed the package's contents on 28 March. As a result of his analysis, McDonald found 3, 4-methylenedioxy amphetamine to be present. After the analysis, he replaced the package in his evidence locker and Detective Riggs picked it up the next day. Riggs thereupon returned it to Detective Cobbler, and on 8 April, Cobbler checked the package in at the evidence room of the Greensboro Police Department where it remained until trial.

The defendant's evidence was to the effect that Cobbler came to the house on the day in question, but that he never retired to a back room with the defendant. There was also testimony that no table of any kind was present in the back room to which the defendant and Cobbler allegedly retired. None of the witnesses for the defendant saw any controlled substance in the house and testified that Cobbler left only ten minutes after he had arrived.

The defendant's motions for judgment as of nonsuit at the close of the State's case and his own were denied. The case was submitted to the jury which found him guilty on both counts.

Further facts pertinent to the disposition of this case will be discussed in the opinion.

*Attorney General Edmisten by Assistant Attorney General Edwin M. Speas, Jr., for the State.*

*Smith, Carrington, Patterson, Follin and Curtis by Kenneth M. Carrington for the defendant.*

CLARK, Judge.

[1] The defendant contends that the trial court erred in failing to properly define and instruct the jury that the defendant's possession of a controlled substance must be a "knowing" possession and in failing to instruct that in order for the defendant to "knowingly" possess a controlled substance, he must know of its narcotic character. Since a similar argument was made with regard to the count charging sale and delivery, both counts will be treated together.

In the present case it it noted that the trial court apparently followed Patterned Jury Instructions (N.C.P.I. — Crim. 260.10) wherein the word "knowingly" is used in explaining what the State must prove but is omitted in the "final charge".

It is uniformly held throughout the United States that knowledge of the presence of the contraband drug is an essential element of the offense of possession in violation of Sec. 2 of the Uniform Narcotic Drug Act. A majority of the states also require knowledge of the character of the substance as an essential element. For a compilation of cases, see Annot., 91 A.L.R. 2d 810 (1963).

The question of guilty knowledge was raised in *State v. Stacy,* 19 N.C. App. 35, 197 S.E. 2d 881 (1973) where there was evidence that the defendant was a mere messenger boy in carrying a package to someone and had no knowledge of its contents. A new trial was ordered for failure of the trial court to instruct the jury that the defendant was guilty only in the event he *knew* the package contained heroin.

Clearly, the evidence in *State v. Stacy, supra,* raised the issue of guilty knowledge, which made it necessary for the trial court to give specific instructions. A similar conclusion was reached by our Supreme Court in *State v. Elliott,* 232 N.C. 377, 61 S.E. 2d 93 (1950), wherein defendant, charged with transporting intoxicating liquor, pled and offered evidence of lack of knowledge of the presence of liquor in his automobile. See also *State v. Welch,* 232 N.C. 77, 59 S.E. 2d 199 (1950).

But in *State v. Elliott, supra,* at 378, 61 S.E. 2d at 95, it is stated:

"A person is presumed to intend the natural consequences of his act [citations omitted]. Hence, ordinarily,

where a specific intent is not an element of the crime, proof of the commission of the unlawful act is sufficient to support a verdict. [citations omitted] . . .

Nothing else appearing, it would not be necessary for the court, in the absence of a prayer, to make reference in its charge to guilty knowledge or intent. *Scienter* is presumed. . . . "

In the present case, the issue of guilty knowledge is not presented by the evidence, and there was no prayer for instructions. Under these circumstances we do not find error in the failure of the trial court to give instructions on guilty knowledge, either of the fact of "possession" or of the fact of "narcotic character".

[2] Next, the defendant contends that the trial court committed prejudicial error in sustaining the State's objections to several questions asked of witnesses by the defendant and by refusing to allow the answers to questions which were relevant to the establishment of a defense by the defendant. The defendant was seeking to discredit on cross-examination the chain of custody established by the State with regard to the MDA purchased at the defendant's house. Each officer who handled the MDA testified extensively as to their individual systems for marking the package for future use. Detective Cobbler was on the stand at the time and had previously testified that he had placed his initials and the date on the package, which, together with the character of the package, is how he could identify it as the same he had purchased from the defendant. He also testified that he always used the same kind of tape to secure the envelopes into which he placed evidence and initialed that tape. Defense counsel then asked:

"Do you initial them the same way?

MR. JOHN: Objection.

COURT: Sustained.

A. (By the witness) Yes, I do.

COURT: Don't answer that question. I SUSTAINED the objection."

To this the defendant excepted. While this evidence may have been relevant to certain of the issues relating to the witness's system of identification, its exclusion in the circumstances of this case was not prejudicial in that evidence of the same import

had already been admitted and the fact amply covered by other testimony. See, 3 Strong, N. C. Index 2d, Criminal Law, § 169 at 137 (1967).

With reference to the second exception that the defendant makes to the sustaining of an objection by the State, the defendant has not placed the witness's answer in the record. Consequently, it is impossible to determine whether the trial court committed prejudicial error in excluding the questions, and we accordingly do not consider this exception. *State v. Forehand*, 17 N.C. App. 287, 194 S.E. 2d 157 (1973).

[3, 4] The remaining exceptions under this assignment of error relate to the identification by Dr. McDonald of the contents of the package as 3, 4-methylenedioxy amphetamine and the subsequent admission of that package into evidence. Suffice it to say that Dr. McDonald's credentials more than adequately supported him as an expert in the field of forensic chemistry, thereby enabling him to express a qualified opinion, following his chemical analysis, as to the contents of the package. Furthermore, upon a careful review of the evidence on chain of custody, there was a sufficient foundation to permit the admission of the MDA into evidence. *State v. Bell*, 24 N.C. App. 430, 210 S.E. 2d 905 (1975).

[5] A collateral matter raised with reference to the introduction of the MDA was that the State was allowed, over defendant's objection, to reopen its case after it had rested, but before the defendant had put on any evidence. It is well established that it is within the discretion of the trial judge to reopen the case and to allow the State to present additional evidence. We find there was no abuse of discretion in reopening the case. See *State v. Shutt*, 279 N.C. 689, 185 S.E. 2d 206 (1971).

[6] The defendant's next contention is that the conviction of the defendant for both possession and sale of the same controlled substance places him in double jeopardy, contrary to the Fifth Amendment to the Constitution of the United States and Article I, Section 19 of the North Carolina Constitution. Under facts identical with those in the present case our Supreme Court has held that the crimes of possession and sale are separate and distinct offenses and a conviction on both such offenses does not constitute double jeopardy. For a complete discussion of this proposition, see *State v. Cameron*, 283 N.C. 191, 195 S.E. 2d 481 (1973).

The defendant's last assignment of error is that the trial court erred in refusing to grant defendant's motions for judgment as of nonsuit. Having carefully reviewed the evidence in the light most favorable to the State, we find no error in this ruling. Consequently, in the trial below, we find

No error.

Chief Judge BROCK and Judge HEDRICK concur.