# COURT OF APPEALS

### OF

## NORTH CAROLINA

### AT

## RALEIGH

---

STATE OF NORTH CAROLINA v. ANDREW MORTON CALDWELL

---

STATE OF NORTH CAROLINA v. KEITH NEIL MADDOX

No. 8014SC1216

(Filed 7 July 1981)

1. **Searches and Seizures § 24— affidavit for search warrant—confidential information received by another officer**

   An officer's affidavit based on information received from another officer who in turn received his information from a confidential informant was sufficient on its face to support the issuance of a warrant to search one defendant's person, dwelling, and automobile for cocaine.

2. **Searches and Seizures § 20— affidavit for search warrant—magistrate's determination of insufficiency—presentation of second affidavit to another magistrate**

   Where a magistrate determined that an afidavit to obtain a search warrant for narcotics was insufficient to establish probable cause for issuance of the warrant, the State was not estopped from presenting to another magistrate a second affidavit which contained additional information not appearing in the original affidavit relating primarily to the reliability of an unnamed confidential informant, his past record for truthfulness, and his knowledge of illegal drugs, and issuance of the warrant by the second magistrate did not overrule the first magistrate's ruling on the original affidavit.

3. **Searches and Seizures § 20— search warrant—inconsistencies between first and second affidavits—absence of prejudice**

   Defendants were not prejudiced by alleged inconsistencies between facts set out in an officer's original affidavit which was found insufficient to establish probable cause for issuance of a search warrant and the officer's sec-

1

State v. Caldwell and State v. Maddox

ond affidavit upon which the search warrant was based where sufficient facts would remain to support a finding of probable cause for issuance of the search warrant even if the alleged discrepancies were deleted from the second affidavit, and where defendants had a hearing at which they could have established the falsity of information in the affidavit.

**4. Searches and Seizures § 20— destruction of original affidavit for search warrant—warrant based on second affidavit—absence of prejudice**

Defendants were not prejudiced by the State's destruction of an officer's original affidavit for a search warrant which was found insufficient to establish probable cause where the warrant was based on a second affidavit submitted by the officer, and where defendants were able substantially to reconstruct the first affidavit at the suppression hearing based on testimony by officers who drafted the affidavit. G.S. 132-3.

**5. Constitutional Law § 31— suppression hearing—identity of confidential informant**

The trial court did not err in failing to require the State to disclose the identity of a confidential informant during a hearing on a motion to suppress seized evidence where the search was based on a warrant and the informant did not actively participate in the crimes charged. G.S. 15A-978(b)(1).

**6. Searches and Seizures § 44— suppression hearing—erroneous finding of fact—harmless error**

Although the evidence at a hearing on a motion to suppress evidence obtained pursuant to a search warrant issued on 10 January did not support the trial court's finding that a confidential informant had acquired his information on 9 January, such finding constituted harmless error since allegations in the affidavit to obtain the warrant that the informant had observed a large quantity of cocaine in the dwelling to be searched within five days of 10 January were sufficient to support a conclusion by the magistrate that the information supplied by the informant had not gone stale.

APPEAL by defendants from *Godwin* and *Battle, Judges.* Orders entered 5 May 1980 and 16 June 1980, respectively. Heard in the Court of Appeals 28 April 1981.

On the morning of 9 January 1980, Officer David Groves of the Hillsborough Police Department contacted Durham Vice Squad Officer J. F. Albert with information from a confidential informant that cocaine had been observed at a residence near Durham's Jordan High School, and that the residence was occupied by a person named Andy. The officers talked again that night and some surveillance was conducted on the premises at 4713 Hope Valley Road. On 10 January 1980, Groves and Albert prepared an affidavit for the purpose of obtaining a warrant to search the premises at 4713 Hope Valley Road. The affidavit filled

up one normal size fourteen line page and was not signed by Mr. Groves. Albert and Groves presented the application for a search warrant to Durham County Magistrate Angel Green. Magistrate Green questioned the officers about the information contained in the application and was not satisfied that a sufficient showing had been made to establish probable cause for the issuance of a warrant. The magistrate refused to issue the warrant.

The next day Albert took the affidavit which had been rejected by Magistrate Green the previous evening to Durham's Police Legal Advisor, Reece Trimmer. Following a discussion of the events which had occurred, Trimmer, with the assistance of Albert, prepared a new application for a warrant to search the premises, which affidavit contained additional language and information which did not appear in the initial application. Upon completion of the second affidavit, the original affidavit was apparently destroyed. Albert obtained approval from the District Attorney and at approximately 5:00 or 5:30 p.m. on 10 January 1980, presented the new application for a search warrant to Durham County Magistrate Sarah Spell. After questioning Officer Albert about the information contained in the affidavit, Magistrate Spell found probable cause and issued a warrant for the search of the premises described therein. The warrant was executed and a search of the premises was conducted at approximately 9:00 p.m. on 10 January 1980, as a result of which marijuana and cocaine were confiscated and the defendants were arrested.

The defendants were indicted for possession and manufacture of various controlled substances. On 5 May 1980, defendants' motions to suppress evidence obtained pursuant to the search warrant were heard before Judge Godwin. Defendants' motions were denied. On 16 June 1980, Judge Battle entered orders denying the remainder of defendant's pretrial motions, including an amended motion to suppress. Defendants entered conditional guilty pleas, judgments were entered, and defendants appeal from the denial of their motions to suppress as permitted under G.S. 15A-979(b).

*Attorney General Edmisten by Assistant Attorney General Charles M. Hensey for the State.*

*Cheshire & Manning by Joseph B. Cheshire, V, for defendant appellant Caldwell; and Hassell & Hudson by Charles R. Hassell, Jr. and R. James Lore for defendant appellant Maddox.*

CLARK, Judge.

[1] The affidavit upon which the warrant was issued reads as follows:

"APPLICATION FOR SEARCH WARRANT

I (Insert name and address; or, if a law officer, insert name, rank and agency) Investigator J. F. Albert, Durham Police Department, being duly sworn, hereby request that the court issue a warrant to search the (*person*) & (*place*) (*vehicles*) described in this application and to find and seize the items described in this application. There is probable cause to believe that certain property, to wit: Cocaine, a Schedule II controlled substance, and mailed envelopes, receipt mailing labels, licenses, warranty papers and similar documents showing ownership and possession of premises, scales, cutting material, (*constitutes evidence of*) (constitutes evidence of the identity of a person participating in) a crime, to wit: Possession of a Schedule II x controlled substance being cocaine with intent to sell and distribute, a violation of G.S. 90-95 and the property is located (*in the place*) & (*in the vehicle*) (*on the person*) described as follows: (Unmistakably describe the building, premises, vehicle or person—or combination—to be searched.) A one story red brick dwelling structure located at 4713 Hope Valley Road, Durham, N. C. This house has white trim and a carport on the left as you face it. Vehicle is 1972 Oldsmobile four door, tan, NC license SSM—613, and person is Andrew Morton Caldwell, white male age 29.

The applicant swears to the following facts to establish probable cause for the issuance of a search warrant: I am an investigator assigned to the Vice and Narcotics Division of the Durham Police Department; I have received special training in drug identification and drug trafficking as well as extensive training in law enforcement; I have been a law enforcement officer for more than nine years, and have had numerous occasions to investigate the sale of illegal drugs. I make this affidavit based upon my personal knowledge and based upon information I have received from others, including other law enforcement officers all of whom I have known and worked with over time. I as recently contacted by

Officer David A. Groves of the Hillsborough N. C. Police
Department who is an officer I have worked with and per-
sonally know to be a careful and responsible officer. Officer
Groves told me that he, Off. Groves, had a person who acted
as a confidential informer for him on numerous occasions in
the past, including the recent past. Officer Groves further
sta-- that this confidential informer was known to Officer
Groves to be truthful and accurate in his information; Officer
Groves further advised me that this confidential informer has
given him information in the recent past past leading to ar-
rests and convictions, the most recent information from this
informer having been given in the past sixty days and did
lead to an arrest and was accurate information. Officer
Groves also stated that this same info--- is knowledgable in
illegal drug use and in the sale of drugs and narcotics and
this informer can recognize drugs and narcotics by the type
and shape of drug packaging normally used in this area by
drug dealers. Officer Groves further stated to me that this
same informer came to him at a time during this past seven
days and told Officer Groves that he, this informer, was per-
sonally inside the dwelling above described at 4713 Hope
Valley Road, Durham, N. C. where he talked to a white male
who introduced himself as Andy Caldwell. This informer told
Officer Groves that while he was inside this same house that
Andy Caldwell told him that he had cocaine to sell, and fur-
ther showed to this informer a stack of plastic baggies con-
taining varying quantities of white powder. This informer
told Officer Groves that Andy Caldwell stated to this in-
former that he was selling an ounce of cocaine for $1,750, and
$500 for a quarter ounce, and $80 for a gram of cocaine. This
informer stated that he was inside this house and was shown
these plastic baggies of white powder sometime within the
past five days from this date. This informer was questioned
by Officer Groves as to the total amount of cocaine in this
house and the informer replied that 'there was a whole
xxxxxxx bunch of coke' in there. This informer also said
Andy's car was a tan Olds four door with license ssm−613,
and gave Officer xxx Groves a description of the house. I
have personally corroborated that a 1974 Oldsmobile 4 door
license SSM-613 was parked at 4713 Hope Valley Road and
this vehicle is registered to Andrew Morton Caldwell of 4713

Hope Valley Road. Based upon my training and experience as an officer, I know that persons dealing in large quantities of cocaine will package cocaine in xxx plastic baggies of gram and quarter ounce size since this is a street sale quantity. This description by the informer is entirely consistent with known patterns of drug dealers in hard drugs like cocaine. I believe that a quantity of cocaine this large would probably still be located on this premises, and that this automobile is probably used by Caldwell in his transportation and delivery of cocaine, and may contain illegal drugs.

s/ J. F. ALBERT Investigator

Signature of Applicant

Sworn to and subscribed before me this 10th day of JANUARY, 1980.

s/ SARAH H. SPELL

Assistant Deputy Clerk of Superior Court

Magistrate/District/Superior-Court-Judge"

Although not complained of by defendants, we note that this affidavit is not of the usual kind in that the affiant did not receive his information from the confidential informant, but from a named informant (Officer Groves) who in turn received his information from an unnamed informant. The affidavit, since it sets out facts upon which the magistrate could determine the reliability of both the unnamed informant and the named informant would appear to satisfy fully the reliability requirements of *Aguilar v. Texas*, 378 U.S. 108, 12 L.Ed. 2d 723, 84 S.Ct. 1509 (1964) and *Spinelli v. United States*, 393 U.S. 410, 21 L.Ed. 2d 637, 89 S.Ct. 584 (1969); moreover, it is well-established that where the named informant is a police officer, his reliability will be presumed. *See State v. Vestal*, 278 N.C. 561, 180 S.E. 2d 755 (1971) (affiant may rely upon information of other officers obtained in the performance of their duties), *cert. denied*, 414 U.S. 874, 38 L.Ed. 2d 114, 94 S.Ct. 157 (1973); *see also State v. Williams*, 49 N.C. App. 184, 270 S.E. 2d 604 (1980) (approving warrant wherein affiant received his information from an officer who had learned it from a confidential source). We therefore hold that this affidavit is sufficient on its face to support the issuance of a search warrant and that it complies with all the legal requirements for a valid showing of prob-

able cause. We note that defendants have nowhere objected to the sufficiency of this application/affidavit on its face, but have assailed rather, the procedure followed by Officer Albert in obtaining the warrant and the factual basis for some of the information.

[2] Defendants argue on the sole authority of *United States v. Davis*, 346 F. Supp. 435 (S.D. Ill. 1972), that the State should be equitably estopped from taking an affidavit containing substantially the same information as the first to a second magistrate once the first affidavit had been determined insufficient to establish probable cause. Defendants assert that the State was simply judge-shopping and argue that "[t]o permit one judicial officer to overrule another of equal rank in this manner is to render the judicial action of an official of the General Court of Justice a meaningless act." We fail to see how *United States v. Davis*, *supra*, applies to the facts of the case *sub judice*. In *Davis* it was the *identical* affidavit that had already been rejected that was presented to a second magistrate. Here the affidavit was not identical to the first. The testimony at the hearing revealed that Mr. Trimmer was better versed in drafting applications for search warrants and that although he drafted the second affidavit based upon the first, he added to it certain information that Groves had previously related to Albert, but which had not appeared in the first affidavit. This information appears to have gone primarily to the reliability of the unnamed informant, his record for truthfulness in the past, and his knowledge of illegal drugs. These additional matters resulted in a substantially more complete affidavit being presented to Magistrate Spell than the one presented to Magistrate Green. The two magistrates did not rule on identical affidavits or on identical information; therefore, Magistrate Spell cannot fairly be said to have "overruled" Magistrate Green's ruling on the first affidavit. A further ground for distinguishing *United States v. Davis*, *supra*, is that the *Davis* court held that the affidavit in that case failed to establish probable cause. We have held that the affidavit before Magistrate Spell was sufficient to support a finding of probable cause. We must reject defendants' argument on the grounds that the *Davis* case upon which they rely is factually distinguishable from the case *sub judice*.

[3]  Defendants next point to several alleged inconsistencies between the facts set out in the first affidavit and those in the second. They argue that this is some evidence that the affidavits contained false statements made knowingly and intentionally, or with reckless disregard for their truth. *See Franks v. Delaware*, 438 U.S. 154, 57 L.Ed. 2d 667, 98 S.Ct. 2674 (1978). We have examined the discrepancies alleged by defendant and find them to be insignificant, but even if all the so-called discrepancies were deleted from the affidavit, sufficient facts would remain to support Magistrate Spell's finding of probable cause. The *Franks* holding is limited to cases where the allegedly false statement is necessary to a finding of probable cause. *Id.* Such not being the case, defendants cannot claim prejudice from the inclusion of the statements in the warrant; besides which, *Franks* requires only that a hearing be held at which defendants may establish the falsity of information in the affidavit. Defendants had such a hearing and thus got all they could ever be entitled to under *Franks*. *See State v. Louchheim*, 296 N.C. 314, 250 S.E. 2d 630, *cert. denied*, 444 U.S. 836, 62 L.Ed. 2d 47, 100 S.Ct. 71 (1979).

[4]  Defendants argue that by destroying the first affidavit, the State violated G.S. 132-3 requiring the preservation of public documents. We see no reason to address this argument since defendants fail to show how the destruction of the first affidavit in any way prejudiced them, in light of the fact that the search warrant was based on the second affidavit. Their argument that the first affidavit might have contained evidence favorable to their defense or have provided material for impeachment of the second affidavit is not persuasive. Defendants were able to substantially reconstruct the first affidavit at the suppression hearing based on the testimony of Groves and Albert, who drafted the affidavit; Trimmer and Officer O. G. Mannon, who read the document; and Magistrate Green who refused to issue a warrant on the basis of the first affidavit. Defendants clearly got the information contained in the first document before the court and we hold that any potential for prejudice resulting from the destruction of the original affidavit was thereby offset.

[5]  We reject defendants' argument that the identity of the confidential informant should have been revealed. Neither G.S. 15A-978 nor the case of *Roviaro v. United States*, 353 U.S. 53, 1 L.Ed. 2d 639, 77 S.Ct. 623 (1957), cited in defendants' brief require

the disclosure of the identity of an unnamed informant where the search was based on a warrant, *see* G.S. 15A-978(b)(1), and the informant did not actively participate in the offense, *see State v. Cameron*, 283 N.C. 191, 195 S.E. 2d 481 (1973); *State v. Ketchie*, 286 N.C. 387, 211 S.E. 2d 207 (1975); *State v. Parks*, 28 N.C. App. 20, 220 S.E. 2d 382 (1975), *cert. denied*, 289 N.C. 301, 222 S.E. 2d 701 (1976); *State v. Orr*, 28 N.C. App. 317, 220 S.E. 2d 848 (1976).

Defendants argue that the original affidavit presented to Magistrate Green was insufficient to establish probable cause. This argument is irrelevant. The affidavit presented to Magistrate Spell was sufficient and it was upon this second affidavit that the warrant issued. We have already held that this warrant contains sufficient facts to establish probable cause even absent those facts which defendants claim were false or exaggerated.

[6] Defendants argue finally that the findings of fact of Judge Godwin were not supported by the evidence. We have carefully reviewed the record and find ample support in the testimony before the judge on *voir dire* for each finding of fact to which defendants have excepted save one. In the order of 5 May 1980, Judge Godwin found that the confidential informant had acquired his information on 9 January 1980. Neither Albert's affidavit nor any testimony at the suppression hearing supported this finding. The only evidence of the time when the informant gathered his information is found in the affidavit itself which indicates the informant learned of the drugs within five days prior to 10 January 1980 and that Albert believed "that a quantity of cocaine this large would probably still be located on this premises." The Magistrate apparently reached the same conclusion. We hold that this error by the trial judge was harmless in light of the fact that the facts actually alleged, although different than those found by the judge, were sufficient to support a conclusion by Magistrate Spell that the information supplied by the informant had not gone "stale."

We find no error in the denial of defendants' motions to suppress.

No error.

Judges VAUGHN and WELLS concur.