STATE OF NORTH CAROLINA v. KENDRICK LEVINE STONER

No. 8219SC353

(Filed 7 December 1982)

1. **Criminal Law § 89.6— testimony that defendant was framed by witness—admissibility on question of credibility**

   In a prosecution for possession with intent to sell and sale of marijuana, testimony by defendant that he was framed by an SBI agent because of his alleged unwillingness to cooperate in a murder investigation should have been admitted to allow the jury to determine the credibility of the SBI agent.

2. **Criminal Law § 26.5; Narcotics § 1.3— conviction of possession with intent to sell and sale of marijuana—no double jeopardy**

   The entry of separate judgments against defendant for possession with intent to sell and sale of marijuana was proper under G.S. 90-95(a) and did not violate defendant's right against double jeopardy.

APPEAL by defendant from *Washington, Judge.* Judgments entered 29 September 1981 in Superior Court, ROWAN County. Heard in the Court of Appeals 19 October 1982.

On 19 November 1979, defendant was indicted for four offenses: two charges of sale and delivery of marijuana and two

charges of possession with intent to sell marijuana. One sale and delivery and possession allegedly took place on 9 August 1979, the other on 25 September 1979.

The State's evidence tended to show the following. On 9 August 1979, Mary Jo Miller and SBI agent Brenda Corbet, drove to defendant's trailer and told him they wanted to buy an ounce of marijuana. He sold them an ounce for thirty dollars. Corbet met with SBI agents Nelson and Stout; she initialed and dated the marijuana and turned it over to Nelson. On 25 September 1979, Corbet and Miller returned to defendant's trailer. Corbet asked defendant if he had any marijuana. He said no, but he could get some at his mother's house. He got in Corbet's car and directed her to a house on Division Avenue. Defendant went inside and returned with a grocery bag and a set of scales. They drove back to defendant's trailer. He weighed two ounces of marijuana into two plastic bags and gave them to Corbet. She gave him eighty dollars.

Agent Stout testified that he and Nelson took Corbet to areas they believed people were trafficking in drugs. They showed Corbet pictures of defendant and where he lived.

Defendant's evidence tended to show the following. In 1979, he was living in a trailer with Betty Barber and her three children. He said that on 9 August 1979, Mary Jo Miller and another person visited him. Miller asked him where she could find some marijuana. He told her that he was not involved in drugs, and asked her to leave. She returned to his trailer two or three times a week with the other person and asked him where she could get marijuana. Each time he told her that he could not help her, and he was not involved in drugs.

Defendant testified that when he was arrested, he saw Agent Stout at the police station. According to defendant, Stout asked him to sit down, showed him the warrants for his arrest, and told him that he could get up to ten years on the conviction of each of the charges. Then Stout said that he did not want to talk about the drug charges, but that defendant knew what he wanted to talk about.

When defendant was asked what Stout wanted to talk to him about, the State objected, and the court sustained the objection.

Defendant testified that he went to Virginia in February 1980 and got a job as a carpenter. He said that he went there because he feared for the health and safety of himself and his family. At this point, the State objected, and the court sustained the objection. After he had been in Virginia a year and a half, he was picked up for extradition back to North Carolina. Stout and Detective Douglas visited defendant in jail in Virginia. Defendant said:

> Well, Mr. Stout said to me, "Kenny, I guess you know why we're here to see you." I said, "Yes, I have a very good idea." And at that point he said, "Do you remember telling us about John Miller?" . . . He said he wanted to talk to me about John Miller, and I said, "All right." . . . He asked me did I remember telling him that I had been to the home of Larry Thompson the day he disappeared.

At this point, the State objected, and the court allowed direct examination on *voir dire* out of the presence of the jury. On *voir dire*, defendant offered evidence which tended to show that he was framed by Stout and Nelson because of his alleged unwillingness to cooperate in a murder investigation in 1979. According to defendant, Larry Thompson was murdered in 1974, and defendant had been at his house the day he disappeared. Defendant said that he told Stout and Nelson that he knew nothing about the murder. Then Stout said to him: "If you do not cooperate with us, how would you feel if we hassled you, followed you, go everywhere you go, and make things difficult for you?" According to defendant, Stout and Nelson followed him on several occasions. After defendant was arrested on the drug charges, he saw Stout at a club, and Stout said to him: "I told you I was going to get you." In the car on the ride back to North Carolina from Virginia, Stout told defendant that he could not understand why he was holding back information about the murder. Detective Johnson said he knew that defendant knew more information about Larry Thompson's murder than he was telling. He also told defendant that if he would cooperate with them, the drug charges would be dropped.

After *voir dire*, the court sustained the State's objection to the admission of the evidence on the ground that it was not relevant.

Betty Barber and Marvin Haggins testified about Mary Jo Miller visiting defendant, asking for marijuana, and defendant telling her to leave because he did not have marijuana and did not want to get involved in drugs.

Defendant was found guilty of one count of possession with intent to sell and one count of sale and delivery of marijuana. A mistrial was declared for the other two charges. He was given a ten-year active sentence, a five-year suspended sentence with five years supervised probation, and a $10,000.00 fine.

*Attorney General Edmisten, by Assistant Attorney General Elisha H. Bunting, Jr., for the State.*

*Assistant Appellate Defenders James H. Gold and Ann B. Peterson, for defendant appellant.*

VAUGHN, Judge.

[1] Defendant's first argument is that the trial court erred by excluding evidence that he contends tended to show he was framed by Stout. This evidence should have been admitted to allow the jury to determine Stout's credibility. As Justice Ervin said in *State v. Hart*, 239 N.C. 709, 710, 80 S.E. 2d 901, 902 (1954):

> Truth does not come to all witnesses in naked simplicity. It is likely to come to the biased or interested witness as the image of a rod comes to the beholder through the water, bent and distorted by his bias or interest. . . . [T]he law decrees that "any evidence is competent which tends to show the feeling or bias of a witness in respect to the party or the cause," and that jurors are to consider and weigh evidence of this character in determining the credibility of the witness to whom it relates.

Defendant's testimony that he was framed was his defense, preventing him from testifying about the frame was prejudicial error even though he should have first cross-examined Stout to call the matter to his attention. *See* 1 Brandis on North Carolina Evidence § 48 (1982). The State would have been free to recall Stout to rebut defendant's testimony. The jury would decide whether there was any truth in defendant's testimony.

[2] Defendant argues that the trial court erred in entering judgments against him for both sale and possession with intent to

sell because the offenses arise from the same transaction, and the multiple judgments violate his right against double jeopardy. Defendant admits that this Court has consistently held that possession with intent to sell and sale are separate offenses, but he contends that *State v. Cameron*, 283 N.C. 191, 195 S.E. 2d 481 (1973), which was decided under the former statute, should not be applicable under our present statute. In *Cameron*, defendant was charged with possession and sale of heroin. The State's evidence tended to show that an undercover policeman, Conant, went to defendant's house and asked him if he had any heroin. Defendant left his house, and returned with fifteen small packages of heroin. At trial, defendant argued that possession is a lesser included offense of the sale because it is necessary to possess the drug in order to sell it. He contended that possession and sale constitute a single offense, and permit only a single punishment. In his opinion, Justice Moore discussed several analogous cases. In *State v. Moschoures*, 214 N.C. 321, 199 S.E. 92 (1938), defendant, who was charged with possession with intent to sell and unlawful sale of liquor, claimed that it was only one offense and he could receive only one sentence. The Supreme Court disagreed, and held that the unlawful sale and unlawful possession for the purpose of sale are distinct, separate offenses and support separate sentences. In *Albrecht v. United States*, 273 U.S. 1, 71 L.Ed. 505, 47 S.Ct. 250 (1926), defendants, who were charged with four counts of illegal liquor sales and four counts of illegal possession, contended that they could not be punished for both the sale and possession because the liquor which they sold was the same liquor that they possessed. Justice Brandeis disagreed, and said "[P]ossessing and selling are distinct offenses, one may obviously possess without selling; and one may sell and cause to be delivered a thing of which he has never had possession; or one may have possession and later sell, as appears to have been done in this case."

Justice Moore concluded:

> The North Carolina General Assembly has determined that the unlawful possession of heroin is illegal [and] . . . the unlawful sale of heroin is illegal. While possession may be a part of the sale, the possession may be legal and the sale illegal; therefore, they are separate and distinct offenses. . . . We hold, then, that in the instant case two separate, distinct, and punishable crimes were established. . . .

*State v. Cameron*, 283 N.C. at 203, 195 S.E. 2d at 489.

Defendant's argument that *Cameron*, which was decided under our old statute, G.S. 90-88, should not be followed because a different result would have been reached under our present statute, G.S. 90-95, has no merit. A comparison of the two statutes shows that the reasoning in *Cameron* would apply to the new statute as well as the old. G.S. 90-88 provided: "It shall be unlawful for any person to manufacture, possess, have under his control, sell, prescribe, administer, dispense, or compound any narcotic drug, except as authorized in this article." Articles 5 and 5A of Chapter 90 of the North Carolina General Statutes were rewritten in 1971 (c. 919 s. 1 effective 1 January 1972). The present version of G.S. 90-95(a) provides: "Except as authorized by this Article, it is unlawful for any person: (1) To manufacture, sell or deliver, or possess with intent to manufacture, sell or deliver, a controlled substance; . . . (3) To possess a controlled substance."

Defendant contends that since possession and sale are in separate sections of the statute, they are separate and distinct offenses, and since possession with intent to sell and sale are in the same section, they are alternative offenses. Furthermore, the penalties for possession with intent to sell and sale are identical, whereas the penalties for possession and sale are different, which indicates that possession with intent to sell and sale are alternative offenses. Although this argument is reasonable, defendant fails to show how *Cameron* is not controlling, since in *Cameron*, the offenses of possession and sale were also in the same section and had the same punishment. If the legislature intended to overrule *Cameron*, they would have worded the statute to clearly show that they were alternative offenses and not separate offenses.

The errors alleged in defendant's other assignments of error are not likely to recur at the next trial, and, therefore, need not be discussed.

New trial.

Judges WELLS and WHICHARD concur.